# Young *vs.* Withers.

EJECTMENT.

[Messrs. Allen and Craddock and Mr. Owsley for plaintiff: Mr. Dana for defendant.]

FROM THE CIRCUIT COURT FOR HARDIN COUNTY.

|   8d  165|
|132    170|

Chief Justice ROBERTSON delivered the Opinion of the Court.

*June 6.*

JAMES YOUNG, having failed in an action of ejectment, which he brought, in the year 1836, against Delia Withers, now complains that the Circuit Judge erred, to his prejudice, in instructing the jury as to the effect of a long continued possession by those under whom the defendant holds.

Statement of the case.

The plaintiff claims under a patent for eight hundred acres to Richard Barbour; and the defendant holds under a junior grant, for one thousand acres, to William Withers, the father of her deceased husband.

William Withers, being a patentee, also, of five hundred acres, adjoining his one thousand acres, settled on his five hundred acre tract, about the year 1797, claiming to hold and enjoy all the land embraced by both of his patents, each of which conflicted, to some extent

The patents covering the land, conflicting titles of the parties, & facts as to possession by either, or those under whom they claim

with the prior grant of Barbour, under which no actual possession had been taken.

Thus claiming, William Withers continued to reside on the land until his death in the year 1823. In 1818, he placed his son Hiram (the defendant's husband) on the thousand acre tract, where Hiram continued to live until his death, and where the defendant has resided ever since, claiming as his widow.

In December, 1815, the plaintiff bought, under an execution against the heirs of James Barbour, (who was one of the heirs of the patentee, Richard Barbour,) their undivided interest in the eight hundred acres granted to the said Richard, who, as well as the said James, was then dead; and, in October, 1820, the sheriff made a conveyance to the plaintiff, of the interest which he had thus previously bought under the execution.

In December, 1815, one Thomas Barbour, also, sold and covenanted to convey to the plaintiff, the most of the residue of the eight hundred acres patented to Richard Barbour. But there is no evidence of Thomas Barbour's authority to make any such sale or conveyance.

In 1816, the plaintiff settled a tenant within the bounds of Richard Barbour's patent, but not within the limits of either of the conflicting grants to William Withers. And during the same year, and occasionally ever since, the plaintiff himself entered on portions of the land covered by all three of the conflicting patents, and cut and used timber. And this is all the evidence of any actual possession at any time under Richard Barbour's title, excepting only the fact that, on some occasion, since 1822, Hiram Withers expressed the opinion that Barbour's title was the best; proposed to buy it, and apologized for the cutting of timber within Barbour's boundary, by suggesting that it had been done by his servants without his knowledge or authority.

Instructions, and
questions presen
ted.

Upon these facts the Circuit Judge, at the defendant's instance, instructed the jury, in effect: first—that there was no sufficient proof of any such entry by the plaintiff upon the actual possession of William Withers, at any time within twenty years after that possession had commenced, as would suspend the running of the stat-

ute of limitations; and, secondly—that, if the jury should
believe the foregoing facts, the actual possession of Wil-
liam Withers—if he continued to claim to the extent of
both of his patents—should be deemed to have been co-
extensive with the bounds of his two patents, from the
time he settled on the five hundred acre tract, until his
death; and that, upon this hypothesis, they should find
for the defendant.

Whether either of these instructions was erroneous
or not, is the only question we shall consider.

There being no contrariety or conflict in the evidence
concerning the settlement and continued occupancy by
William Withers, or as to the fact that he claimed to
have been, all the time, possessed of all the land includ-
ed by both of his patents, there can be no doubt that, in
judgment of law, he had been, at the time of his death,
in the continued adversary possession of the land now
in contest, for more than twenty years: unless some in-
termediate entry by the plaintiff had broken the contin-
uity of that possession, or unless the subsequent conduct
of Hiram Withers should authorize the deduction that
the land in controversy had not been, in fact, claimed
and occupied as the land of *William Withers*, during as
long a period as twenty years. And therefore, if the
first instruction be right, the second cannot be erro-
neous; and consequently, we will consider the first only.

Conceding every allowable deduction from the facts
proved by the plaintiff, it seems to us, that the legal ef-
fect of those deductions must be—that the actual pos-
session by William Withers—if always intended by him
to include the land in controversy, was never defeated
or suspended by any thing ever done by the plaintiff.

*First.* The plaintiff could have had no legal right of
entry, for his own use, until after the sheriff's convey-
ance, in the year 1820; and though it were admitted
that, however inconsiderable may have been the unde-
fined common interest which he acquired by that con-
veyance, he might have taken possession of the whole
of the eight hundred acres for himself and his co-tenants
in common, yet, nevertheless, he had no legal title to
enter in his own right until after the date of the sheriff's

A grantee having
obtained sepa-
rate patents for
2 adjoining tracts
of land, entered,
and settled upon
one, claiming ti-
tle to both: the
possession thus
acquired & held,
was co-extensive
with the claim.

A purchaser of
land at a sheriff's
sale acquires no
right of entry, un-
til he obtains the
deed.

An entry upon
land, to be legal
& available, must
be by one having
a legal right of
entry when he
enters.

deed; and there could be no pretence for assuming that his prior executory contract of purchase under execution gave him any authority, express or implied, to enter for those who then held Richard Barbour's legal title.

And therefore, as it is clear that an entry, to be available and legal, must be by a person having, at the time of making it, a legal right of entry, we cannot resist the conslusion that no entry made by Young, prior to October, 1820, could have had the legal effect of defeating or suspending the actual possession of William Withers, or of any person holding under him. And there can be no doubt that William Withers' actual residence had been continued more than twenty years before the plaintiff acquired any legal title.

An entry—to defeat a subsisting actual possession, must be with an express intention (manifest at the time,) to take possession: going occasionally on to the land, cutting and using the timber, is not sufficient.

But moreover, as a matter of law, the plaintiff's acts between 1816 and 1820, should not be deemed such, as could have broken the continuity of any actual possession by William Withers, or by Hiram Withers, even if, before 1820, the legal right of entry had been in the plaintiff.

An entry, to defeat a subsisting actual possession, must be made with the express intention to take possession, and that intention must be manifested at the time of entry. 1 *Saunders, by Wms.* 319, *f. Stowell* vs. *Zouch, Plow.* 366, *a.*

An occasional entry on land and using timber will not *per se* be sufficient for ousting an adverse actual possession. *The cases supra*, and *McDowell et al.* vs. *Kinney's Heirs et al.* 3 *J. J. Marsh.* 518, and *Humphrey* vs. *Jones*, 3 *Monroe*, 262.

An actual possession (with title) is not ousted by an entry upon an interfering tract, but not within the lap.

And certainly, the entry and occupancy by the plaintiff's tenant, not within the bounds of either of Withers' patents, could not have constructively evicted Withers, or in any manner, have affected his actual possession.

The patentee of two tracts, residing on the smaller, settled his son on the other— with what extent of possession is not shown: avowals by the son to the owner of an interfering claim, that that title was (as he thought,)

Then it appears to us to be an obvious deduction of law, as well as of fact, that, when this suit was brought, the plaintiff's right of entry was barred—unless the conduct of Hiram Withers, as already described, could authorize the presumption that, before William Withers had been in the possession of the land as long as twenty years, he intended to circumscribe his claim by the interfering boundary of Barbour's patent. But surely the

evidence could not justify any such deduction. Its utmost effect in favor of the plaintiff, would be, that Hiram Withers, after his father's death, and possibly before, did not consider his own possession as interfering with Barbour's claim. But the extent of his right, as derived from his father, does not appear; and before he settled on the thousand acre tract, his father had been constructively possessed of it, adversely to Barbour's title, more than twenty years. And consequently, even an express disclaimer of title and of possession, afterwards, by the defendant's husband, would not affect her legal right to protect her possession by the pre-existing and continued occupancy for more than twenty years, whereby the plaintiff's right of entry was barred, and the right of possession was vested in the occupant and all claiming under him.

But, moreover, neither of the instructions precluded the jury from considering the effect of the evidence as to the conduct of Hiram Withers. They are both based on the hypothetical assumption, that William Withers had been in fact adversely possessed of the whole of the land embraced by his patents; and the last hypothetically assumes that he had been so possessed for twenty years at least.

We are therefore of the opinion that, there was no essential error in either of the instructions, and that the evidence authorized the verdict and judgment in favor of the defendant.

Wherefore, the judgment is affirmed.

the best, offering to purchase, and apologizing for intruding upon it &c, is not sufficient evidence that *the patentee had withdrawn his claim to, or relinquished his possession of, the interference.——* The son's admissions could affect only *his possession,* at most. And, if there was an express disclaimer by him, his widow, remaining in possession, might, nevertheless, avail herself of 20 years adverse possession by the patentee before the disclaimer, to protect her possession.