## Miniard v. Napier.

(Decided December 8, 1915.)

## Appeal from Leslie Circuit Court.

1. .Adverse Possession—Constructive Possession.—One.who is the true owner of a tract of land, but does not reside upon it, and has no enclosure upon it, has the constructive possession of it, where it is not in the actual ·possession of some other, because, in the absence of any actual possession, the contructive possession is always in the true owner.

2. Adverse Possession—Actual and Constructive Possession.—One who resides upon ·a tract of land, claiming it under a deed or patent, without having all of it enclosed; or who holds it under a deed or patent, and has some portion of it enclosed, claiming it all, is in the actual possession of the portion which is enclosed, and the constructive actual possession of the remainder of the tract, in the absence of an actual possession of some portion of it by another.

3. Adverse Possession—Actual and Constructive Possession.—One who is the owner of two adjoining tracts of land and who resides upon one, and claims to be the owner of both; or has a portion of one of the tracts enclosed, and claims to be the owner of both, is in the actual possession of his enclosure, and the constructive actual possession of all the remainder of both tracts of land, although there may be no enclosure upon the tract upon which he does not reside.

4. Adverse Possession—Absence of—Color of Title—Extent of Possession.—One who has no color of title to a tract of land is.in the possession only to the extent of his enclosure, or to a well defined, marked or natural boundary, to which he claims, even as against the constructive possession of the titleholder who has no actual possession.

5. Adverse Possession—Constructive Possession.—One constructive possession can not oust another constructive possession, and one constructive actual possession will not oust another of the same kind.

6. Adverse Possession—Constructive Actual Possession.—A constructive actual possession is in law an actual possession, and is as effective in creating a bar to the recovery of the land by the title holder as a pure actual possession, if held adversely for the statutory period.

7. Adverse Possession—Junior Patentee—Entry and Possession.—If a junior patentee enters upon the interference between his patent and the senior grant, at a time when the senior patentee is not in the actual nor constructive actual possession, and the junior patentee improves and encloses a portion of the interference with the purpose to possess himself of his grant to its boundaries, he thereby becomes in the possession of the entire interference, because a constructive possession is evicted by an actual or con-

structive actual possession; but if at the time of the entry of the junior patentee upon the interference, the senior patentee is in the actual or constructive actual possession of his grant, then the possession of the junior patentee only extends to his actual enclosure or to a well defined, marked or natural boundary, because one constructive actual possession will not oust another of the same kind.

8. Adverse Possession—Junior Patentee—Entry and Possession.—If a junior patentee once becomes in the actual and constructive actual possession of an interference between his grant and that of the senior patentee, by entering upon the interference and enclosing a portion of it, with the purpose to possess himself of his entire boundary, at a time when the senior patentee is only in constructive possession of his grant, the senior patentee, by an entry thereafter upon his grant, without the interference, does not oust the constructive actual possession of the junior patentee, because one constructive actual possession does not evict another of the same kind.

9. Adverse Possession—What One May Do Who Claims By.—One who claims lands by adverse possession is entitled to tack to the period of his possession, the possession of those under whom he claims the land, to make out the statutory period of adverse possession, to toll the right of entry by the title holder, if the possession is continuous, and a privity exists between the holders of the possession.

CLEON K. CALVERT, H. C. FAULKNER, H. C. FAULKNER, JR., and R. B. ROBERTS for appellant.

METCALF & JEFFRIES, LEWIS & LEWIS and JAMES G. BAGLEY for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 28th day of May, 1853, a patent, based on a survey made on August 11th, 1852, was granted to James Napier, for two hundred acres of land, on Abner's Branch, a tributary of the Greasy Fork, of the Middle Fork of the Kentucky River, and on Fork of Lovely, in Harlan county.

On June 4th, 1877, James Napier conveyed the portion of the lands embraced in the above mentioned patent, which lies to the south of the ridge which separates the waters of the south prong of Bear Branch from those of Half Mile, a tributary of Abner, to the appellee, Israel Napier. On June 16th, 1890, James Napier conveyed all of the lands embraced in the patent to appellee.

On July 19th, 1897, Abner Eversole, the sheriff of Leslie county, in which county the lands are situated

since the creation of the last named county, sold the lands embraced in the patent, by the authority of an execution which he levied upon it, in favor of the Louisville Tin & Stove Co., and against appellee, when the Louisville Tin & Stove Co. became the purchaser, and the sheriff conveyed the lands to it by a deed, on the 21st day of April, 1899.

On September 6th, 1902, the Louisville Tin & Stove Co. conveyed the lands to W. F. Hall.

On September 30th, 1907, W. F. Hall, by deed, conveyed the lands to appellee.

On the 20th day of April, 1909, the appellee brought this suit in the Leslie Circuit Court, claiming that he was the owner of the lands, and that appellant, John B. Miniard, had wrongfully gone upon the lands and cut and carried away a large number of timber trees, and sought to recover the value of the trees from him.

The appellant denied the ownership of the lands by appellee, and claimed to be the owner of the portion of the lands from which he had cut and removed the trees, by the adverse possession of himself and those through whom he claimed title, for the period necessary under the statute to vest title in him, and that the purchase by appellee of the lands was champertous, and his title on that account was void.

The allegations, as to adverse possession and champerty, were traversed of record.

The trial resulted in a verdict and judgment against appellant for the value of the trees, and he seeks to have the judgment reversed.

The appellant, upon the trial, introduced evidence, which conduced to show that on May 28th, 1853, a patent based upon a survey made on the 9th day of September, 1852, was granted to one Joseph Miniard for two hundred acres of land, and adjoining this tract, a patent based upon a survey made on the 17th day of November, 1855, was granted to Israel Miniard on August 15th, 1856, for fifty acres of land. Previous to the year 1860, Israel Miniard, who had theretofore entered upon the fifty acre tract, sold it to Joseph Miniard, and executed to him a writing evidencing the sale, and promising to make a conveyance and delivered Joseph Miniard the possession of the land. The heirs of Israel Miniard conveyed the fifty acre tract of land, by deed, to Joseph Miniard in 1882. The lands, which were embraced by

these two patents, lie adjoining to each other, and about fifty acres of the land conveyed by the two hundred acre patent to James Napier is covered by these patents to Joseph Miniard and Israel Miniard. Joseph Miniard, with the intention of taking and holding possession of all of the land embraced in the patent to him, entered upon it in 1852. Joseph Miniard claimed to own all the lands embraced in each of the patents to the extent of the boundaries. He nor any one else has ever resided within either of the patents claimed by him, at a point within the James Napier patent. He resided upon the two hundred acre grant to him, from the year 1852 until 1862, when the perils of the Civil War caused him to remove to a dwelling upon the fifty acres granted to Israel Miniard, and which he had purchased several years before, where he resided for one and a half years, and then moved back to his original residence on the two hundred acre grant, and resided upon it for about twenty years, when he moved to a house about two hundred and fifty yards away, upon adjoining lands, where he has resided since that time. Three or four years before the beginning of the Civil War, Joseph Miniard cleared and fenced a field containing about twenty acres upon the south prong of Bear Branch, in which to grow corn, and cultivated it or some portion of it every year from that time until the year 1885, when he sold a portion of the land, including a portion of this field, to one Bailey, and he and Bailey cultivated their respective portions of it in corn during the year 1885, and each planted a crop there in the year 1886, when Bailey sold the land he had bought from Joseph Miniard to the appellant and transferred the writing which had been executed to him by Joseph Miniard, and which evidenced the sale, to appellant, and thereafter, in 1890, he conveyed the lands to appellant. Joseph Miniard and appellant cultivated their respective portions of the field until 1906, when he sold and conveyed and delivered the possession of all the lands covered by his two patents, on the south prong of Bear Branch, and running around the tops of the ridge between the south prong of Bear Branch and Half Mile, and between the south prong of Bear Branch and Lovely, and between the prongs of Bear Branch, to appellant. The greater part of the field above mentioned was upon the interference between the patents to Joseph Miniard and Israel Miniard, and the James Napier

patent, and the remainder of it was upon the grant to Joseph Miniard. In this clearing and cultivating the field and enclosing same, Joseph Miniard entered upon the interference between his patent and that of James Napier, and, also, upon the interference between the James Napier patent and the patent to Israel Miniard. About 1885, Joseph Miniard fenced and thereafter cultivated a field containing about nine acres, upon the north prong of Bear Branch, and which covers the greater part of the interference between his two hundred acre patent and the James Napier patent, on the north side of the ridge between the two prongs of Bear Branch. The patents to Joseph Miniard and Israel Miniard were read in evidence and likewise the deeds from the heirs of Israel Miniard to Joseph Miniard, and the two deeds from Joseph Miniard to appellant. The appellant testified that in 1890 he marked the line of the lands now claimed by him upon the top of the ridges which surround his claim. Proof was made that Joseph Miniard claimed to own the entire interference of both his patents with the Napier patent, until he sold and conveyed to appellant, who has claimed to own all the lands embraced by his deeds to the line marked by him, from the time he acquired the bond for title and deeds were executed to him, until the present time, and that he and his vendors have been continuously holding the lands upon which the trees were cut, and claiming to own same adversely to every one for more than fifty years. The boundary described in the deeds to appellant is the same as that described by the marked line.

The appellee put in evidence a patent granted to Ballard Begley, for two hundred acres of land, which was based upon a survey made April 27th, 1889, and which covers, in addition to a considerable quantity of other lands, the greater part of the James Napier patent, and most, if not all, the interference between the James Napier patent and the patents to Joseph Miniard and Israel Miniard. Ballard Begley conveyed the lands embraced in the patent, to him, to appellee, by a deed, on June 26, 1894, which deed was read in evidence. The appellee, also, read a patent which granted to him one hundred acres of land, which was based upon a survey made June 3rd, 1873. Also a deed to appellee from James Napier for the two hundred acres which were embraced in the patent, which was based on a survey on

August 11th, 1852, and for another two hundred acres covered by a patent to James Napier, which was surveyed August 10th, 1852, and for one hundred acres granted to G. W. French, June 25th, 1873. This deed was dated June 16th, 1890. The proof does not show that the lands embraced in the two last named patents have any connection with the lands mentioned in the first named patent. Proof was introduced which tended to show that the appellee lived on Half Mile about forty-six years previous to the trial, and resided there at the time James Napier conveyed to him a portion of the James Napier two hundred acre patent, in 1877, but whether upon his own lands or upon lands adjoining to the James Napier survey of August 11th, 1852, does not appear; that a small portion of the last named survey, near the southeast corner, had been cleared and fenced about forty-five years before the trial, but by whom or under what claim does not appear. This clearing and fencing was not within the interference, which is in controversy here. For over twenty years the appellee has lived at the mouth of Half Mile, but the lands embraced in the James Napier two hundred acre survey of August 11th, 1852, adjoin the lands upon which he now lives.

The corner trees, marked as such, to the Joseph Miniard and Israel Miniard patents, are still standing, and the patents can be and have been several times surveyed, and the corners can be located by the calls for courses and distances set out in the patents.

Both appellant and appellee offered instructions to be given the jury as the law of the case, but all were refused by the court, to which exceptions were taken.

The court then, upon its own motion, gave to the jury seven instructions, by which it was to be guided in its verdict. The appellant objected to each of the instructions and excepted to the rulings of the court overruling his objections. Appellant's motion to set aside the verdict and judgment and grant him a new trial being overruled, he excepted thereto, and appealed to this court.

The appellant now insists upon a reversal of the judgment because the court misinstructed the jury as to the law of the case, and in a way which was prejudicial to his substantial rights.

By the first instruction the court directed the jury to find for the appellee the market value of the trees which were cut and removed by appellant after September 30th, 1907, the date of the deed from Hall to appellee, for the land, not exceeding the amount claimed in the petition, unless the jury should believe from the evidence the state of facts to exist, as set out in instruction No. 2.

Instruction No. 2 directed the jury, that if it believed from the evidence that the appellant had, for fifteen years or more before the commencement of the suit, been in the actual, adverse, open, notorious, and continued possession of the land in controversy, claiming the same as his own, to a well defined boundary, to find for the appellant.

The objection of appellant to this instruction, under the facts of this case, is well founded. The appellee, as the claimant under the senior patent, is the owner of the land upon which the trees stood, and therefore the trees, unless he or one of his vendors has lost the ownership of the lands by the adverse possession of appellant and his vendors, for the statutory period, or the acquisition of the title by appellee is champertous. If no adverse possession by the appellant or his vendor has ever existed, the title to the land, without question, is in the appellee. No adverse possession of lands can exist unless the possession be actual, and not constructive. Where there is no actual possession of land by any one, the owner of the title thereto has the constructive possession of it. There can be but one valid title, and the owner of it constructively possesses the land, unless another has the actual possession. An actual possession of some portions of a tract of land is frequently created by construction or operation of law, but there must always be an actual possession of at least some portion of the tract. For an instance, if one resides upon a tract of land, claiming to own it under a deed or patent, he is in the actual possession of the land to the extent of the boundaries of his deed or patent, although the lands are not enclosed; or if one, the owner of a tract of land by virtue of a deed or patent, enters upon it and improves and encloses a portion of it with the intention to possess all of it, he is in the actual possession to the extent of the boundaries of his deed or patent, by construction to the extent that no one else has actual possession of it.

If one is the owner of two or more tracts of land, which adjoin to each other, and of which he is the owner by virtue of deeds or patents, and he resides upon one of the tracts, claiming the ownership of both, he is in the actual possession of both, although there may be no improvement upon the one upon which he does not reside, if there is no actual adverse possession of it by some other. The actual possession of the latter tract by the owner is then actual possession, but by construction or operation of law. Boyce v. Blake, 2 Dana, 127; Young v. Withers, 8 Dana, 167; Griffith v. Dicken, 2 B. M., 2; Fish v. Branaman, 2 B. M., 379, 2 C. J., 243. This actual possession by construction is what in the earlier decisions of this court was called constructive actual possession. If one, by reason of his superior title, is in purely constructive possession of the land, his constructive possession cannot be ousted, except by an actual possession, in another, because there cannot be a purely constructive possession of the same land by two different persons, and a constructive actual possession in one can not be ousted, except by an actual adverse possession in another. Hence, if one has a purely constructive possession of a tract of land by reason of being the owner of it under a senior patent, and the owner of a junior patent which interferes with the senior patent enters upon his junior patent, but without the interference, the constructive possession of the remainder of his patent, without his enclosure, does not have the effect of ousting the constructive possession of the senior patentee as to the lands embraced within the interference, but if the junior patentee enters upon the interference and encloses a portion of it, intending to hold to the extent of his boundaries, then his actual possession evicts the constructive possession of the senior patentee, and the law by construction extends the actual possession of the junior patentee to the entire interference; but if the senior patentee has a constructive actual possession of the patent by residing upon it or having enclosed lands upon it, and claiming to the extent of his boundaries, although his residence or enclosure is without the interference and his possession of the interference is an actual possession by construction, or resides upon a contiguous tract of land, of which he is the owner and claims the ownership of both, although he has no enclosure upon the tract upon which he does not reside, then the

law will not by construction extend the actual possession of the junior patentee to the entire interference, but will confine his possession to his enclosure, because one constructive actual possession cannot be used to oust a constructive actual possession already acquired.. Hence, when a junior patentee has entered upon the interference, when the senior patentee has only a constructive possession, and has enclosed a part of the interference with the purpose of possessing the entire boundary, and has thereby become in the constructive actual possession of the portion of the interference not enclosed, the entry of the senior patentee upon his patent, at a point without the interference with the intention to possess the whole, and which in the absence of any interfering possession, would give him the constructive actual possession of the interference, the junior patentee will not be ousted from his actual possession of the entire interference, because the constructive actual possession already acquired by the junior patentee of the entire interference will not be ousted by possession of the same kind in another. A constructive actual possession of lands for the statutory period will bar a recovery by the title holder as effectively as a purely actual possession, and, hence, in the further discussion of this case, the term actual possession will be used as including the term constructive actual possession. Hence, if, at the time Joseph Miniard, the junior patentee and the vendor of appellant, entered upon the interference with the intention of holding to his boundaries, and improved and enclosed a portion of the interference, if James Napier, the vendor of appellant, and who then held the superior title to the interference, was not then in the actual possession of the senior patent, the actual possession of Joseph Miniard extended to the entire interference, and if he openly and continuously held the possession, claiming it as his own against all others, for fifteen years thereafter, he became vested with a complete title to it, and the right of entry of the senior patentee and his vendees was tolled to the extent of the entire interference. If James Napier was in the actual possession of the senior grant, a portion of it, actually, and the remainder by construction, at the time of the entry by Miniard upon the interference, then the possession of Miniard could only extend to the extent of his enclosure. If at the time of the entry of Joseph Miniard upon the interference, James

Napier was not then in the actual possession of the senior grant, by residing upon it or upon lands owned by him adjoining it, and claiming to own it, or by having some portion of it improved and enclosed, claiming to the extent of his boundaries, he nor his vendees could not thereafter disturb the actual possession of Joseph Miniard, or his vendees, or stop the running of the statute of limitations by entering upon the senior patent, without the interference, or anything short of taking actual possession of the interference by an entry thereon, with the purpose of holding all of the interference, and this entry would have to be made within fifteen years after the entry of Miniard.

It is, too, well settled for controversy, that the claimant of land, by adverse possession, is entitled to add to the period of his possession that of his vendors, if the possession is continuous, to make out the statutory period necessary to toll the right of entry of the title holder.

There must necessarily be a privity between the holders of the possession before they can be tacked together, for else each possession would be an independent trespass. Slusher v. Howard, 88 S. W., 1109; Adams v. Tiernan, 5 Dana, 394; Beals v. Brooks, 7 J. J. M., 232; Winn v. Wilhoite, 5 J. J. M., 521; Hood v. Walton, 2 A. K. M., 620; Shannon v. Kenney, 1 A. K. M., 3.

It is only one who enters upon land without color of title, or one who claims under an inferior title, and enters upon the interference with the superior title, while the holder of the superior title is in the actual possession of the lands embraced in the senior grant, who is restricted in his possession to his enclosure. The one who enters under color of title under a patent or deed, to him, is in possession to the extent of his boundaries, unless the real title holder is in actual possession at the time of the entry of the claimant who enters under color of title. In the case at bar, the vendor of appellant and under whom he claims title, and who was a junior patentee, entered upon both patents claimed by him at a time when the record fails to show that there was any claim of actual possession by the senior patentee under his patent. There is no evidence conducing to show that the senior patentee or any one claiming under him ever entered upon the interference between the patents,

either before the expiration of fifteen years, from the entry by the junior patentee or since. The lands in controversy are embraced in deeds to appellant from his father, and are within the interference between the patent to James Napier and the patents to Joseph Miniard and Israel Miniard.

For the reasons indicated, instruction No. 2 was erroneous and prejudicial to the substantial rights of appellant. Grigher v. Wheeler, 12 B. M., 183; McLawniss v. Salmons, 11 B. M., 98; Fox v. Hinton, 4 Bibb, 559; Smith v. Lockridge, 3 Litt., 19; Taylor v. Shields, 5 Litt., 88; Taylor v. Cox, 2 B. M., 429; Whitley Coal & Land Co. v. Lawson, 94 Ky., 603; Ky. Land & Emigration Co. v. Reynolds, 60 S. W., 635; Abner v. Creech, 79 S. W., 247; Martin v. Hall, 152 Ky., 677; Combs v. Stacey, 147 Ky., 222; Harrison v. McDaniel, 2 Dana, 144; Bassett v. Lush, 156 Ky., 490; Burt & Brabb Lumber Co. v. Sackett, 147 Ky., 232; Ferrell v. Bauer Cooperage Co., 159 Ky., 716.

If the appellant and those under whom he claims title were in the adverse possession of the lands in controversy, at the time of the making of any of the deeds of conveyance for the lands in controversy, through which appellee claims, including the one from his father, in 1890, such a sale was champertous, and each of them should be included in the instruction upon that subject, as well as the sale in 1890.

Upon the facts shown by the record, the only instructions which should have been given were as follows: First: An instruction directing the jury to find for appellee the reasonable market value of the trees cut and removed by appellant, after the conveyance of the land to him by Hall, unless the state of facts exists as set out in instructions two or three. Second: An instruction, in substance, directing the jury to find for appellant, if it should believe from the evidence that the appellant and those under whom he claims had the actual adverse possession of the lands from which the trees were cut and removed, continuously and uninterruptedly, for as much as fifteen years, at one time, previous to the cutting and removal of the trees, claiming the land openly and notoriously as his own or their own, adversely to all others. Third: An instruction, in substance, to find for appellant if the jury should believe from the evidence that at the time of the sale and con-

veyance of the lands to appellee, either in 1890 or 1907, or to the Louisville Tin & Stove Co., in 1899, or to W. F. Hall, in 1902, the appellant or those under whom he claims were then in the adverse possession of the land. Fourth: An appropriate instruction defining the meaning of actual possession and adverse possession as used in instructions as applied to the facts of the case, upon the principles set out in this opinion. However, other and additional evidence upon another trial may control the necessity of differently instructing the jury.

For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.

All members of the court sitting.