## Gray et al. v. Wells et al.

(Decided June 5, 1931.)

BARNES & SMITH and GILMORE KEOWN for appellants.

SANDIDGE & SANDIDGE, E. B. ANDERSON, J. A. DEAN, JR., JOHN B. WILSON, HEAVRIN & MARTIN, and KIRK & BARTLETT for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This is an action of ejectment brought by the appellants (plaintiffs below) against the appellees to recover the possession of 134 acres of land in Ohio county. The main if not the only value to the land is the oil which has been discovered beneath its surface. The appellees defended on several grounds, including an assertion of title in themselves; but in view of the way the case went off in the lower court, we need consider only their traverse of the appellants' allegations of appellants' ownership of title. On this issue, the trial court, after the appellants had closed with the introduction of their evidence, peremptorily instructed the jury to find for the appellees, and from the judgment entered on that verdict, this appeal is prosecuted.

Appellants in order to recover had to show title in themselves either by a chain of paper title running back to the commonwealth or by adverse possession. They undertook to establish their title on both grounds.

To prove their paper title, they introduced a certified copy of a patent from the state of Virginia signed by Patrick Henry, patenting to Fielding Lewis 10,000 acres of land lying on Panther creek waters of Green river in the county of Jefferson; next a certified copy of the will of Fielding Lewis as recorded in Ohio county. This will bears date October 19, 1781, there being a codicil to it of date December 10, 1781. By this codicil, Fielding Lewis devised to his son, Howell Lewis, 10,000 acres of land which, in his will, he stated was "located or to have been located" for him by Mr. Hancock in the county of Kentucky. Appellants next produced a certified copy of a deed from Howell Lewis and his wife to Thomas Goodwin as recorded in the records now in the custody of the clerk of Nelson county

of this state. This deed was executed on April 16, 1800, by Howell Lewis and Ellen Hackley Lewis, his wife, of Culpepper county, Va., and ·purports to convey to Thomas Goodwin of Fredericksburg, Va., 3,000 of the 10,000 acres of the Fielding Lewis patent. The acknowledgment to this deed in part reads that on the 16th day of April, 1800, "the above named Howell Lewis and Ellen Lewis, his wife, appeared before us, Samuel Slaughter and Bud Haywood, two of the justices of the peace for said county, and acknowledge the above indenture to be their act and deed." The justices of the peace further certified that they had examined the said Ellen Lewis privately and apart from her husband and that she had freely and voluntarily relinquished her right of dower in the land and consented to the deed. Attention must be called to the fact that there is nothing in the certificate of acknowledgment stating that the grantors subscribed the deed in the presence of these justices of the peace. This deed was recorded in the office of the clerk of the Supreme Court for the Bairdstown District of Kentucky. The records of that clerk, under a law later adopted, were turned over to the county clerk of Nelson county and it was a copy of the deed thus recorded and certified to by the county clerk of Nelson county that was produced in this case by the appellants. Appellants next introduced in evidence a number of certified copies of powers of attorney purporting to have been executed by heirs of Thomas Goodwin, deceased, authorizing and empowering one Robert H. Thornton to sell and convey all or any part of the 3,000-acre tract and to execute deeds therefor. At least two of these powers of attorney purport to be executed by guardians for infant heirs. They were all executed in Virginia. Appellants next introduced a certified copy of a deed from Robert H. Thornton, attorney in fact, conveying to Allen B. Gray the 134 acres here in dispute, being part of the 3,000 acres described in the Howell Lewis deed. This Gray deed was dated February 8, 1867. The appellants lastly produced the will of Allen B. Gray, who died on October 19, 1873. Only three clauses of that will are here involved, Nos. 1, 10, and 11. They read:

1. "This day I have disposed of the farm on which I live to my son James Z. Gray in writing."

10. "If it becomes necessary in order to the performance of this contract with my son James, that he should have a deed to the land where I now live and which I have sold him this day my Executors or the survivors of them, are hereby authorized to make said deed. And the survivors of said Executors is authorized to act as fully under this will as both could do if living."

11. "I hereby appoint my son John H. Gray and Walter A. Gray my Executors herein."

Appellants claim that the contract mentioned in this will was later rescinded by James Z. Gray and the executors of Allen B. Gray, by reason of which the title which they insist the chain thus outlined put into Allen B. Gray, vested in them either as heirs at law of Allen B. Gray or as heirs at law of his heirs at law who died after he did but before this litigation began. Appellees objected to the introduction of each of these links in appellants' claimed paper title, but the court tentatively allowed them to go into the evidence. Later he sustained appellees' objections to the copy of the alleged deed from Howell Lewis to Thomas Goodwin, the deed from Thornton to Allen B. Gray, and the powers of attorney to Thornton, and excluded them from the consideration of the jury. Appellees' objections to the various links in appellants' chain may be thus briefly summarized: Appellees first say that as the record introduced by appellants shows that the will of Fielding Lewis was probated on January 17, 1782, it is obvious that he died before the patent with which the appellants start their chain and which bears date December 2, 1785, was issued. The patent recites that the survey upon which it was issued was made October 10, 1783, and therefore it is equally obvious that the survey was also made after the death of Fielding Lewis. These things being true, appellees insist that it was incumbent upon the appellants to show that the entry upon which the survey was later made, was itself made in the lifetime of Fielding Lewis because, as they say, under the law as it then was, an entry made in the name of one who is dead is void. To support that proposition they cite Bowman v. Violet, 4 T. B. Mon. 350. The record in the instant case is silent as to when the entry was made. Appellees further assert that it was also necessary for appellants to show that

this entry was made in the lifetime of Fielding Lewis and before he executed his will or codicil because, as they say, prior to the passage of the statute of wills in Virginia in 1785 to take effect January 1, 1787, a testator could not by will dispose of after-acquired property. In support of this proposition they cite Skeene v. Fishback, 1 A. K. Marsh, 356. Passing to the certified copy of the will of Fielding Lewis offered by appellants, we find that appellees' objection to it is thus based: At the time this will was probated, Kentucky was yet a part of Virginia, hence Fielding Lewis, a resident of Virginia, was, at the time of his death, not a nonresident of Kentucky; therefore his will should have been probated and recorded in Spottsylvania county, Va., that being the county of Fielding Lewis' residence at the time of his death, and hence the only certified copy of his will which would be admissible in evidence would be a certified copy of the will as probated and recorded in Spottsylvania county. These things being true, the certified copy of the will as recorded in Ohio county was, as appellees assert, inadmissible in evidence. In support of this proposition they cite Morgan's Devisees v. Gaines, 3 A. K. Marsh, 613. Coming next to the certified copy of the deed from Howell Lewis to Thomas Goodwin, we find that appellees' objection to its introduction is based on the ground that its certificate of acknowledgment fails to state that the deed had been subscribed by the grantors before the justices of the peace who took the acknowledgment which, being true, did not make the original deed a recordable instrument and hence the certified copy established nothing. Appellees' attack on the deed of Thornton, attorney in fact, to Gray is predicated upon the claim that there is an utter lack of proof that Thornton represented all of the heirs of Thomas Goodwin; and that it is not shown that this Thomas Goodwin was in fact the grantee in the Howell Lewis deed. To avoid the argument of appellants that identity of names will raise a presumption of identity of persons, appellees point out that in a record of a lawsuit in which the heirs of Thomas Goodwin were seeking by ejectment to oust a lot of people from the possession of various parts of this 3,000 acres of land, Allen B. Gray being one of them, and which was introduced in evidence in this case by the appellants, it appeared that some of the defend-

ants were defending on the ground that there were two Thomas Goodwins living in Fredericksburg, Va., and that some of the so-called plaintiff heirs of Thomas Goodwin were claiming descent from one of these Thomas Goodwins and some were claiming descent from the other Thomas Goodwin. Appellees further point out that some of these powers of attorney to Thornton were executed by guardians of minor heirs, and they say that under our law as the guardian himself without an order of court could not have conveyed the land he could not give a power of attorney to do so.

Without passing on all of these objections of appellees to appellants' claim of paper title, we think the attack on the certified copy of the deed from Howell Lewis to Thomas Goodwin is fatal to the establishment by the appellants of their chain of paper title and that the circuit court properly excluded it from the consideration of the jury. Sections 6 and 7 of the Acts of 1796, vol. 1, Littell's Laws, p. 569, provide:

> "Where any person is about to convey a tract of land and resides in any other county than that in which the land doth lie, it shall and may be lawful for such person and his wife (if he has any) to acknowledge and subscribe a deed for the same in the presence of two justices of the peace in the county where they reside; and such justices having previously examined the wife apart from her husband, whether she with her own free will and consent, relinquished her right of dower in such lands shall certify the same on the deed under their hands; and a copy of such deed shall be recorded in the court of the county within four months; and the clerk shall certify on the original deed that a true copy thereof hath been recorded in his office; and such deed shall, within eight months thereafter, be recorded in the court of the county in which the land shall lie, which shall be as lawful as if the said deed had been acknowledged or proved by the parties in open court; and the clerk for recording a copy and a certificate on the original deed, may demand and receive six shillings, to be paid by the party or parties acknowledging the same, and to be collected as his

other fees are by law paid and collected, but shall not receive the tax on such copy.

"Be it further enacted, That where the parties reside in any other state, and are about to convey any land lying within this commonwealth, it shall be lawful for them to proceed in like manner, except that a copy need not be recorded in the county where the parties reside; but the clerk of the county shall certify on the original deed that the persons before whom such deed was acknowledged were justices of the peace, and that due faith and credit is to be given to any act done by them, when acting in their official character; and the seal of the county shall be affixed to such certificate, and such deed certified as aforesaid, shall be admitted to record within any county in this state where the land may lie, and shall be deemed as lawful as if the same had been acknowledged by the parties or proved in open court. Any person or persons about to give a power of attorney to another, residing in any other county within this state, may acknowledge the same in the court of the county where the person about to acknowledge the same may reside, and a copy of such shall be certified by the clerk, that it hath been recorded in his office, and acknowledged in open court; and a copy so certified being produced to the clerk of the court where the person resides to whom the power is made, and in which the business is to be done, shall be admitted to record in his office; and such power shall be deemed sufficient. Where the person or persons making such power of attorney resides in any other state, he or they shall proceed as is above required, except that the clerk certifying the copy shall affix the state or county seal; and such copy shall be recorded in some court within this state. And as in many instances deeds have been recorded where the wife has not relinquished her right of dower, owing to the great inconveniency attending it; wherefore,"

In the case of McConnell v. Brown, Litt. Sel. Cas. 459, which was an action of ejectment, the court had under consideration the above mentioned statute. A certified copy of a deed acknowledged by John Wallace and wife

was offered in evidence and was excluded by the trial court. We quote from the opinion:

"The deed in question was certified by two justices of the peace of Jefferson county, to have been acknowledged before them, and they were certified by the clerk of the county court of that county, to be justices of the peace, and his attestation was certified by the presiding justice of the county court, to be in due form. In virtue of these certificates, the clerk of Greenup county court certifies that the deed was recorded in his office; and it was now offered in evidence, without any further proof of its execution.

"It is perfectly clear, that the clerk of Greenup county court was not authorized to admit the deed to record in virtue of the certificates attached to it. In general, a clerk is authorized to admit a deed to record, only upon the acknowledgment of the party who made it, or the proof of the requisite number of witnesses; but, for the convenience of the citizens, the legislature has provided by the 6th section of the 'act to reduce into one the several acts and parts of acts concerning conveyances,' 1 Litt. 569. . . .

"From a bare inspection of this act, it is manifest, that its requisitions have not been complied with in this instance. In the first place, the justices of the peace of Jefferson county, have failed to certify that the deed was subscribed, as well as acknowledged, in their presence, and both are equally requisite, as was held during the present term, in the case of [Womack &] Wilson, etc. v. Hughes, Litt. Sel. Cas. 292; and in the next place, the clerk of Jefferson county court, has not certified on the deed that a copy of it was recorded in his office, as the act requires.

"It is evident, therefore, that the deed was admitted to record by the clerk of Greenup county court, without the authority of any law to justify it, and its being so recorded, cannot, as has been frequently decided by this court, entitle it to the credence of an enrolled or recorded deed. Consequently, the circuit court erred in admitting it to be read without proof of its execution."

In Hyne's Representatives v. Campbell, 6 T. B. Mon. 286, this court re-examined the rule laid down in this McConnell case and said:

"Feeling sensible that these decisions may materially affect and jeopardize many of the titles in the State, because that from the conveyances that come before us, acknowledged before two justices of the peace, they have seldom or never certified that the grantor also subscribed the same in their presence, we have been led to review these cases critically; willing to expound the law of conveyances, which is a confused mass of legislation, as liberally as possible, ut res magis valeat quam pereat. But after the most attentive reconsideration of these cases, we are constrained to adhere to them as sound law on this point, for the following reasons: First, the act of 1792, 1 Dig. L. K. 340, is explicit in its requisitions, that the party shall 'acknowledge and subscribe,' the deed 'in the presence of two justices of the peace,' and that the justices shall 'certify the same,' and it admits of no construction to escape from the dilemma, and the legislature has the undoubted control of this subject, and may declare what the law shall be even without assigning a sufficient reason therefor. But secondly, there is an obvious reason for the enactment, which no doubt has its influence. It was inserted to identify the grantors, and thereby to prevent any from making such acknowledgments in the names of others without furnishing the means of detection, and thus grants made by persons by fraudulent substitution, were intended to be guarded against. . . .

"Thus stood the law till 1792, when our first act before noticed was passed. That, after providing for the acknowledgment of deeds before two justices of the peace, by grantors residing without the county, where the land lies, in the next section, allows grantors also, who reside without the State, to proceed in the 'same manner' as those within the State, and without the county, were allowed to do. But in this act the word 'subscribe' as well as 'acknowledge' is inserted, which we have seen, we are not at liberty to expunge or disregard. The

deeds in question must be brought within it to be good, and they cannot be brought within it, because the justices have not certified that the grantor subscribed the deed as well as acknowledged it in their presence. The Legislature have once thought and decided, that this law with the word 'subscribe' in it, as requisition, was politic. It still remains for that department of the government, and not this, to decide on the policy of its continuance, when its provisions are so frequently disregarded by the justices of the peace, who attempt to act under it. It is our duty to declare what the law is, regardless of the consequences that may flow from its administration.''

It follows therefore from the rule laid down in these cases that inasmuch as the two justices of the peace who took the acknowledgment of Howell Lewis and his wife to the Goodwin deed failed to certify that the grantors had subscribed the deed in their presence, the clerk of the Supreme Court for the Bairdstown District was without authority to record the same, which, being true, a certified copy of the deed so recorded which was offered in evidence by appellants was not competent since the record from which it was made was itself entitled to no credence and the lower court properly excluded it. There being thus a break in the chain of paper title as adduced by appellants, they failed to establish a paper title back to the commonwealth. Unless; therefore, appellants established a title by adverse possession, the trial court correctly instructed the jury to find for the appellees.

There were only two competent witnesses produced by appellants to establish their title by adverse possession, Elijah Davis and J. W. Sharpe; the testimony of the incompetent witnesses offered by the appellants being properly excluded by the court. Considering their testimony together, we find that after the death of Allen Gray, whose adverse title at the best so far as this record shows did not start prior to 1867 when he took a deed from Thornton as attorney in fact of the Goodwin heirs, J. Z. Gray, his son, mentioned in the first clause of his will, lived upon the land for a couple of years; then Walter Gray, another son, lived there for 5 or 6 years; then James Sutton lived there for a while; then Alex Grigsby lived there for a while; and then Jim Bartlett lived there at least until after 1887. Davis does say that

the land was never unoccupied from the time of the death of Allen Gray until after Jim Bartlett lived there, but there is no showing whatever in this record as to how these people were living upon the land, whether as tenants of J. Z. Gray, conceding he had the title by virtue of a deed he said he had from the executors or as tenants of the Allen Gray heirs, conceding that the contract referred to in the will of Allen Gray had been rescinded, or as tenants of some other claimant to the property, or in their own right, or as just mere trespassers without any claim of right. It does appear affirmatively that Jim Bartlett was claiming to own this land himself because appellants introduced a court record of a proceeding to open a road by the county court through this 134 acres in which Jim Bartlett had joined as a petitioner and in which he alleged he owned this land. In order to establish title by adverse possession where there is a number of succeeding possessors of the land, some privity must be shown between the various possessors before their possession can be tacked together to make out the necessary time for such possessions to ripen into title; the other requisites for the acquisition of title by adverse possession being present. Miniard v. Napier, 167 Ky. 217, 180 S. W. 363. See also "Kentucky Rule As to Tacking Interests in Adverse Possession," 16 Ky. Law Journal, 139. There was an utter failure of proof to show any privity here between the appellants and those who occupied the land after the death of Allen B. Gray. Therefore, the appellants did not establish title by adverse possession in themselves.

It follows that the lower court did not err in peremptorily instructing the jury as it did and its judgment is affirmed.