Chief Justice Robertson
delivered the Opinion of the Court.
In this case, the reversal of a judgment of eviction, in an ejectment on the several demises of Luke Tiernan, and of Ellicot and Meredith, severally claiming the right of entry under distinct purchases under executions against the estate of Thomas Deye Owings, and also on the demise of Mason and others, as trustees of said Owings — is urged on two grounds: — First. That the Circuit Court erred in refusing to admit, as evidence on the trial, a decree in favor of John Peck, under whom the plaintiffs hold as tenants, and a conveyance from Thomas Triplett, as agent for one Ferguson, to the said Owings and Peck, of the land in controversy; and, secondly, that the Judge erred, also, in overruling a motion for a non-suit, and in giving, and in overruling, instructions to the jury.
In addition to judgments and executions thereon, against the estate of Owings, and sales and conveyances in virtue thereof, to Tiernan and to Ellicot and Meredith, and a prior conveyance, by Owings, to Mason, *395 Fletcher and others, in trust, of several tracts of land, excepting a tract near the mouth of Slate creek, and also all the interest of the said Owings and Peck in the ‘‘Licking Iron Company” —the defendants in error proved, on the trial, that two men, named Thompson, “purchased” the land in controversy from one Ralph Morgan, and entered upon it, in 1801, and that, after having occupied it “for some years,” they left it, and Owings entered and occupied it, through his tenants, until since the sales to Tiernan and to Ellicot and Meredith, under executions, in 1827; and proved, also, that, when the declaration in ejectment was served on them, the plaintiffs in error were in possession of the land as the tenants of John Peck. This being the substance of all the evidence in support of the action, a motion for a non-suit was made, and overruled; and, thereupon, the plaintiffs in error proved that, in 1817, Owings and Peck, and two others, named Whiting, entered into co-partnership in “The Licking Iron Works;” and offered to prove that, afterwards, in 1818, Triplett, as attorney in fact of Ferguson, who held a legal title, derived from George Underwood, senior, the grantee, sold and conveyed the land in controversy to Owings and Peck, and that the latter, in 1833, had obtained a decree for a conveyance from the unknown heirs of Ferguson, and from George Underwood, junior, to whom the patentee, George Underwood, senior, had conveyed the title, as a joint tenant with Thomas Underwood, prior to the separate conveyance by the latter to Ferguson, for whom Triplett afterwards made the deed to Peck; and, also, that a commissioner had executed the decree, by making the conveyance pursuant thereto. But the Circuit Judge refused to permit either Triplett’s deed, or the decree, or the conveyance by the commissioner, to be read; and instructed the jury, in substance, that, if they should believe that the land in litigation belonged to the Licking Iron Works, and, also, that the Thompsons and Owings had been in the possession thereof for twenty years prior to the sales under the executions against Owings, in 1827, they should find a verdict for the plaintiffs in the action; and refused to instruct them that, if they *396 believed that Owings claimed under the title of Underwood, the action was not sustained by the evidence and law of the case.
A decree of the General Court for a conveyance, & the commissioner’s deed, were offered as evidence of title: as that court is one of limited jurisdiction,and these documents alone did not show that it had cognizance of the case, or that the def'ts were before the court—there was no error in rejecting them.
Instructions by which facts are assumed which do not exist, or which a jury alone can find,are erroneous
An actual, tortious eviction, will alone sustain an ejectment; and when the deft, thus entered, he cannot avail himself of an outstanding title in a stranger. Whether defend ant’s entry was forcible and tortious, or otherwise, must be decided by the jury.
Whether the pltf makes out such session as will enable him to recover upon mere possession, or not, must be submitted to the jury—who must find that the possession of the pltf. was for 20 years, or connected with that of his predecessors, the whole making a term of 20 years, adverse possession, without any interval—to sustain the action on that ground.
A deed made by an agent, without authority, & accepted by the grantee, though not valid to pass the title, may be evidence for some purposes: as, to show the nature & extent of the grantor's claim, or—the deed being to two—show that one claimed only an undivided portion: and it might be used as an estoppel to prevent one of the grantees from denying the title of the other.
These facts and opinions present the points which we are now to consider, upon the errors assigned and already Stated.
First. The Circuit Judge did not err in overruling the motion for a non-suit: because, whatever might have been the more rational deduction from the proofs, the jury might possibly have inferred from them, (1.) that there had been no interval in the continuity of possession from 1801 to 1827; (2.) that Owings was entitled to the benefit of the occupancy by the Thompsons, and (3.) that he had held adversely to Underwood’s patent, prior to 1817, and independently of it afterwards—so that the lessors, as purchasers of Owings’ title, had a legal right of entry, arising from the antecedent possession, and that, therefore, though there may have been no proof that he had acquired any legal interest from Underwood’s grant, and though that was the only document of title exhibited on the trial, nevertheless, the persons in possession could not use it, availably, as an outstanding title, showing that the right of entry was out of the lessors.
Second. Nor can we decide that the Circuit Judge erred in rejecting the decree, and the commissioner’s deed to Peck, made in execution thereof; for, waiving other objections to them, being, as they were, exhibited a one there was no proof that the General Court—of special and limited jurisdiction—which rendered the decree had cognizance of the case, or that the persons, against whom it was rendered, were, in any way, before the Court as parties.
Third. But the instruction, already described as having been given to the jury, was erroneous; because it assumed facts which either did not exist, or which the jury alone had the right to find. The instruction can not be sustained, unless it were admitted that either Peck, or some one claiming under him, entered torcibly, as a trespasser, and, without color of title, actually evicted the lessors, or some one holding under them; or *397 that, at the time of the sale of Owings’ interest under execution, he had the possessory right to the land. Had there been such actual and tortious eviction, the possession, thus wrongfully divested, should be restored, and would be, alone, sufficient to maintain this action; moreover, no mere outstanding, superior right of entry, in a stranger, could be used, availably, as a shield by such a trespasser in such an action. But there was no proof of any such actual and unlawful ouster; and, if there had been, the jury, and not the Court, had the right to decide that fact, as well as all the facts necessary for showing that Owings had, by a continuous and adverse possession of at least twenty years, acquired such a right to the possession as would entitle the lessors to recover upon it alone, even though they had not been actually evicted by a trespasser, and notwithstanding the outstanding.and independent title exhibited by Underwood’s patent. And, as already intimated, the facts necessary for establishing such a possessory right as that arising from a possession of twenty years, are, first—that Owings immediately succeeded the Thompsons; second—that, by contract or otherwise, he was entitled to the benefit of their occupancy; and, third, that they, and he after them, held adversely to Underwood’s patent, or had acquired Underwood’s legal title. It is evident, therefore, that the single fact that Owings and the Thompsons had occupied the land more than twenty years, was not, as decided by the Circuit Judge in his instructions, sufficient to entitle the lessors to a verdict.
Fourth. There was error, also, in the rejection of the deed to Owings and Peck by Triplett, as attorney in fact for Ferguson, who claimed an undivided interest under Underwood, for, though Triplett may have had no sufficient authority to convey Ferguson’s interest, nevertheless, the acceptance of his deed, by Owings, is a fact tending, in some degree at least, to shew, first— that, after the date of it, if not before, Owings held the land as a co-tenant with Peck; and, secondly, that he did not hold adversely to Underwood’s title, or independently of it. Had that deed been admitted as evidence, Peck, *398 too, might have been estopped to deny Owings’ right to an undivided moiety of the land—even if the decree in Peck’s favor had also been admitted as evidence; for, not only were none of the lessors parties to that decree, rendered in a suit brought since their respective purchases, but the decree itself could not show, as against strangers to it, that Thomas Underwood had ever released his equal interest in the land to his co-tenant, George Underwood, junior, whose title alone was decreed to Peck.
Wherefore, for the errors which have been noticed, the judgment of the Circuit Court is reversed,and the cause remanded for a new trial.