## Illinois Central Railroad Company v. Word.

### (Decided June 21, 1912.)

### Appeal from McCracken Circuit Court.

1. Carriers—Live Stock—Duty as to Transportation.—Where a carrier accepts live stock for shipment, it is its duty to provide for it good and suitable cars; to transport it with reasonable dispatch; and not to subject it to rough or improper treatment during the journey.

2. Carriers—Live Stock—Liability.—Where death or injury occurs to live stock in transit, the carrier is liable if loss or damage is due to human agency; it is not liable, if due to inherent vice of the animals or to natural causes.

3. Carriers—Live Stock—Action for Loss or Damage—Evidence—Burden of Proof.—In a suit for damages for death or injury to live stock in transit, the burden to show negligence of the carrier is on the plaintiff, where he or his agent or representative accompanied the shipment; where shipment is in exclusive control of carrier, plaintiff must show condition of stock at time of delivery to and at time of its receipt from the carrier, and if death or injury occurred, the burden shifts and the carrier must account for the loss or injury.

WHEELER & HUGHES for appellant.

EATON & BOYD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

About April 5, 1911, Will Word purchased in East St. Louis, Ill., six horses and six mules, and delivered them to the Illinois Central Railroad Company for shipment to Paducah, Ky., via Brookport, Ill. The stock was re-received by the railroad company and transported over its lines to the point of destination, to-wit: Paducah, Ky.,

where it arrived on April 7th. Upon examination, it was found that several of the animals were skinned, cut and bruised, and one of the horses was so seriously injured that it died in some three or four days thereafter.

Conceiving that the injuries to the stock were the result of improper handling, during the course of shipment, the owner instituted an action against the railroad company, in which he sought to recover damages in the sum of $455. The company denies that it had been guilty of any negligence whatever in transporting the animals. Upon this issue, the case was submitted to a jury, with the result that plaintiff recovered a verdict for $200, and the railroad company appeals, insisting that the injury which the mules and horse sustained enroute from East St. Louis to Paducah were due to some inherent vice in one or more of the animals, rather than to any negligence on the part of the company.

It appears that these horses and mules were loaded into a car in the afternoon of April 5th, and that, after being in the car some time and before the train to which the car was connected had left the yards in East St. Louis, it was discovered that a mare was down and could not get up. The car was thereupon returned to the yards, and the stock unloaded, and a pen, as it were, built in one end of the car, and this mare, that had been found down on the previous afternoon, was stalled off to herself, the other eleven being left loose in the car. She was skinned and had a cut on her hip at that time. In fact, she had sustained some injuries before she was purchased by appellee, though, he testified, that they were of an inconsequential nature. After the stock had been loaded, as above indicated, the car was transported over the lines of the appellant company to Paducah; and, from the evidence of all the trainmen who had it in charge from the time it left East St. Louis until it reached Paducah, the car was not subjected to any unusual treatment or rough handling. This evidence strongly supports the theory of the company that the injuries, sustained by this live stock, were the result of an inherent vice in some of the animals. On the other hand, there is testimony to the effect that, when the car reached Paducah, some of the slats were off, and there were evidences on the car that the legs of some of the animals had passed through these openings where the slats were off. The stall that had been built in one end

of the car, was down, and the whole interior of the car presented a generally wrecked appearance.

Appellee testified that the mare, which some of the witnesses for appellant say was vicious, and bit and kicked at the other stock, was a gentle and kindly disposed animal, although, of course, this impression was necessarily gained by him during the short time that he observed the mare while she was being exhibited for sale and her working qualities were being demonstrated to his satisfaction. Appellant's contention is, that these animals had been brought into East St. Louis from different parts of the country, were all strange to each other, and that it was not surprising that more or less friction developed when they were thrown together for the first time. This conclusion is in entire harmony and accord with the theory of appellant, that the damage to the stock results from the vicious, mean disposition of one of the animals; but, appellee testified that, before the stock was put into the car, it was assembled in the pen at the stockyards together for some time, and that he observed no manifestation of any viciousness on the part of any of the animals, as described by witnesses for appellant. In this connection, it is pointed out as a most significant fact that, in a memorandum made by the agent of appellant who caused the car to be returned to the stockyards and the stock unloaded when it was found that one of the mares was down, no mention was made of the viciousness of any of the animals, nor was it stated in the memorandum that the pen was built to protect the remaining animals from the viciousness of the one put into the pen; but, on the contrary, the fair inference deducible from the language used in the memorandum is, that the pen was built for the benefit and protection of the injured mare which was found down in the car.

· The sum and substance of all the evidence amounts to this: When this live stock was delivered by appellee to appellant in East St. Louis, all of them, save one, were in good condition, and the damage to this one consisted of a skinned place upon the hock and a cut upon one hip. When they reached appellee, they were all more or less damaged, cut, skinned and bruised, and one so seriously so, that it died in a few days. Neither appellee nor any representative of his accompanied the shipment.

Under the decisions of this court in L. & N. R. Co. v. Brown, 28 Rep., 772, and C., N. O. & T. P. Ry. Co. v.

Greening, 30 Rep., 1080, when appellee had shown that the stock was in good condition when delivered to the company and in a damaged condition when it reached its destination, the burden shifted from appellee, and it thereupon became incumbent upon the company to show that it handled the stock with due care and that the injuries, of which appellee was complaining, did not result from any improper handling or treatment of the stock, while in transit. Recognizing that it was incumbent upon it to account for the injury, the company introduced its evidence showing conclusively that the car, in which this stock was shipped, was in all respects suitable for that purpose, and that it was handled throughout the journey from East St. Louis to Paducah with due and proper care and was not, at any time, subjected to any rough handling or unusual treatment. In addition, it showed that one of the horses manifested a disposition to injure the others by biting, kicking and fighting, and that, to protect them from the viciousness of the horse, it caused one end of the car to be stalled off and this animal put therein, and that in this condition it started them on the journey. Appellee sought to rebut this evidence of viciousness on the part of one of the animals by testifying that, when he was inspecting the stock with the view of their purchase and when they were assembled in the pens preparatory to shipment, he saw no evidence of viciousness on the part of any of them. He testified that when the car reached Paducah, the pen which had been built by the agents of appellant, was torn down and some of the slats were off the car. Counsel for appellant insists that this very showing on the part of appellee lends color to its charge that the injuries were not due to improper handling, but resulted from the viciousness and meanness of this animal. It is possible that the bruises and injuries complained of were such as could readily have been received by the animals, either in fighting with each other or coming in contact with the sides and ends of the car, in their efforts to escape from the attacks of the viciously disposed mare. The evidence does not disclose the exact nature of these injuries and no attempt was made to show that they were such as might have occurred in the manner indicated. The burden being upon appellant, not only to show that they were handled with due and proper care during the shipment, but also to account for their injuries, it was in-

cumbent upon it to show that the car in which the stock was shipped was suitable for that purpose, and that the compartment made therein for separating the mare from the other stock was properly and suitably made. There is no evidence whatever as to the character of this partition that was put into the car. Appellant simply says that it was put in, and appellee says that when the car reached its destination it was down and in a dilapidated condition. Considering all the evidence, we are not prepared to say that the jury was not warranted in finding for appellee, and if he was entitled to recover anything, the sum awarded him was, under the proof, not out of proportion to the injuries shown to have been sustained by the animals.

Our attention has been called to an apparent conflict in some of the opinions of this court, as to the rule of practice in cases where a recovery is sought for injuries to live stock, while in transit. From an examination of all the cases, the following rules of practice are deducible:

1. Where the live stock is accompanied by the owner or his agent or representative, and injury results while in transit, the burden is upon the owner to show how the injury occurred, that is to say, that it was due to some negligence of the carrier. L. & N. R. R. Co. v. Hawley, 10 Rep., 117; C., N. O. & T. P. Ry. Co. v. Grover, 11 Rep., 236; L. & N. R. R. Co. v. Wathen, 22 Rep., 85.

2. Where the live stock is not accompanied by the owner or his agents or representative, and injury results in transit, it is incumbent upon the owner to show that the stock, when delivered to the carrier, was in good condition, and when received from the carrier at its destination, was in a damaged or injured condition, thereupon the burden shifts and it devolves upon the company to show that the cars, in which the stock was shipped, were in good condition and suitable for that purpose, were handled with reasonable dispatch and were not subjected to any rough or improper treatment during the journey, and the company, in addition, must satisfactorily account for the injured condition of the stock; and, unless the carrier can show that such injury is due to some inherent vice of the animal, the fact that it is injured will be accepted as prima facie evidence of negligence on the part of the carrier. Southern Express Co. v. Fox, 131 Ky., 257; Kelly v. Adams Express Co., 134 Ky., 208.

These rules of practice apply to all cases where death

or injury, for which a recovery is sought, results from some external agency; but, where a recovery is sought for sickness of live stock in transit, or for death resulting from sickness, the burden does not shift, but remains all the while upon the plaintiff, for the sickness or death from sickness of the animal may be due to a diseased condition existing at the time of or prior to its shipment, though undiscovered by its owner or the carrier, or may be due to atmospheric, climatic or other conditions, over which the carrier has no control, and for which it would, in no event, be responsible. As said in McDowell v. L. & N. R. Co., 113 S. W., 519, the jury should not be left to speculate as to the cause of the injury. L. & N. R. Co. v. Warfield, 30 Rep., 352; McDowell v. L. & N. R. Co., 113 S. W., 519; L. & N. R. Co. v. Cecil, 145 Ky., 271. In this latter case a recovery was sought for the death of one of the animals, due to pneumonia, and for injuries to some of the others. Thus, as to one branch, the burden was upon the plaintiff; and, as to the other, upon the defendant. No question was made in the preparation of the case as to who had the burden, and as the company showed that the shipment was handled with due care, and offered evidence to the effect that the injury to certain animals was due to their own inherent vice rather than to any negligence on the part of the company, it was held that the plaintiff was not entitled to recover. The rule of practice announced in this case is in harmony with the case of L. & N. R. Co. v. Warfield, L. & N. R. Co. v. Wathen and McDowell v. L. & N. R. Co., supra.

Judgment affirmed.