## Louisville & Nashville Railroad Co. v. McClintock

(Decided January 9, 1913.)

### Appeal from Bourbon Circuit Court.

1. Carriers—Shipment of Live Stock—Liability for Loss Caused by Delay.—A carrier of live stock is under a duty to transport with reasonable dispatch live stock accepted by it for shipment, and if it negligently fails to discharge this duty, the owner of stock injured or killed by reason of such failure may recover damages for the loss he has sustained.

2. Carriers—Burden of Proof in Action for Injury to Stock.—Where live stock is not accompanied by the owner or his agent and is delivered in good condition to the carrier, the burden is upon it to show that injury to or the death of the stock was not caused by its negligence.

3. Carriers—Connecting Carriers.—Where the initial carrier issues a bill of lading to the point of destination, it is liable for the negligence of all its connecting carriers between the point of delivery and the place of destination.

EMMET M. DICKSON, CHAS. H. MOORMAN, JAS. J. DONOHUE, and BENJ. D. WARFIELD for appellant.

DENIS DUNDON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This appeal is prosecuted to reverse a judgment for $222.40 obtained by appellee in a suit brought by him to recover damages for the death of nine hogs, caused, as he alleged, by the negligence of the appellant in failing to carry and deliver them with reasonable dispatch. A reversal is asked for alleged error of the trial court in refusing to direct a verdict in favor of appellant and error committed in the admission and rejection of evidence.

The hogs that died, as well as others that did not, were shipped from Paris, Ky., to the Union Stock Yards at Cincinnati, on June 18, 1910. The car in which the hogs were loaded left Paris at ten o'clock P. M., and arrived at Central Covington, Ky., at 3:40 A. M., on the following morning. Central Covington is about seven miles from the stock yards, and at 6:40 A. M. the car containing these hogs was delivered by the appellant to its connecting carrier, the Cincinnati Bridge Co., and was hauled by this company into the city of Cincinnati and there delivered at 7:40 A. M., to the Baltimore and Ohio Southwestern Ry. Co., another connecting carrier of the appellant, and by this company was delivered to the stock yards at 10:45 A. M.

The evidence shows that when the hogs were loaded at Paris and when they were delivered the next morning at Central Covington to the connecting carrier, they were in good condition and that they died between the time they left Central Covington and their arrival at the stock yards. The negligence for which the appellant is answerable consists in the delay in the carriage of the hogs from Central Covington to the stock yards. There is evidence conducing to show that if the car containing the hogs had been handled with reasonable dispatch after leaving Central Covington it should have reached the stock yards about 8:00 A. M., but some place between the point of delivery to the B. & O. S. W. Ry. Co. and the stock yards the car containing the hogs was delayed more than two hours, and there is evidence conducing to show that this delay in the extremely hot weather prevailing on June 19th, was the cause of the death of the hogs.

The hogs were not accompanied at any time during the carriage by either the owner or his agent, and as they were delivered in good condition to the carrier, the burden was upon it to show that the death of the hogs

was not caused by any negligence on its part. Illinois Central R. R. Co. v. Word, 149 Ky., 229.

C. Fehry, a witness for the appellant, testified that he was yard conductor for the Cincinnati Bridge Co., and the train he was in charge of carried the car containing the hogs, as well as other cars of stock, from Central Covington to Eighth street in Cincinnati, at which place the cars were delivered to the B. & O. S. W. Ry. Co. He said that he delivered the cars to the B. & O. S. W. at about 7:40 A. M., and that the distance from the point where he delivered the cars to this company to the stock yards was about a mile, and that it generally took about five minutes to go from there to the stock yards.

It is apparent from the evidence that the unexplained and unreasonable delay in the carriage of the hogs occurred after they were delivered to the B. & O. S. W. Ry. Co. They were delivered to this company at a point about a mile from the stock yards at 7:40 A. M., and if handled with reasonable dispatch should have been delivered at the stock yards at least by 8:00 A. M. But the uncontradicted evidence shows that they were not delivered at the stock yards until 10:45 A. M., two hours and forty-five minutes after they should have been delivered. A part of this delay is attempted to be accounted for by Brent Arnold, a witness for appellant, who was its general freight agent at Cincinnati. He testified in substance that the B. & O. S. W. Ry. Co. would not receive cars of stock until after it had inspected them, and that the inspection would probably have taken one hour.

But Fehry, who had charge of the cut of cars, including the car in which the hogs in question were loaded, testifies, as before noticed, that he delivered these cars to the B. & O. S. W. Ry. Co. about 7:40 A. M., and he does not say anything about the inspection of the cars either before or after their delivery to this connecting carrier, or testify that there was any cause for delay. If we should assume, however, that these cars were inspected by the B. & O. S. W. and that the inspection took an hour, the hogs should have been delivered at the stock yards before nine o'clock. Ordinarily a delay of an hour, or two or three hours would be a matter of little consequence in its effect upon the condition of live stock, but at the time these hogs were shipped the weather was extremely warm, the place at which the delay occurred was in a large city, and these conditions made a negligent delay of two hours or more a matter of considerable

importance, and, as the evidence shows, was sufficient to have caused the death of the hogs. It is true the evidence that their death was caused by the extreme heat and the delay in their carriage is not entirely satisfactory, but yet there was sufficient evidence upon this point to take the case to the jury.

Complaint is made of the ruling of the trial judge in refusing to permit Arnold to testify that during the month of June, 1910, and for sometime prior thereto, the tracks of the B. & O. S. W. between Eighth street and the stock yards were in a congested condition on account of heavy traffic, and that unavoidable delays were occasioned thereby. But this witness could not testify as to the condition of the traffic or the tracks on June 19th, nor was any other witness introduced to show that heavy traffic or other reasonable cause prevented the B. & O. S. W. from delivering the cars at the stock yards earlier than it did, and the court did not err in rejecting the evidence of Arnold. If, as a matter of fact, the delay of the B. & O. S. W. in handling the car in which these hogs were loaded was due to traffic conditions that could not be overcome or avoided by reasonable diligence, some witness should have been introduced to explain the conditions existing on June 19th that caused the delay. The condition of the traffic on other days and at other times did not sufficiently illustrate conditions on June 19th, to make the evidence of Arnold either pertinent or competent:

It is also argued that the court committed error in permitting McClintock and other witnesses to testify that the hogs were not carried with reasonable dispatch; but we think this evidence was competent, as the witnesses who made these statements testified that they had been shipping hogs and other stock from Paris to the stock yards at Cincinnati for many years, and were familiar with the time it ordinarily took to carry stock between these points.

As the appellant company was responsible for the failure of its connecting carriers and each of them to carry the hogs with reasonable dispatch—ond there was evidence conducing to show that the B. & O. S. W. was guilty of negligence in this respect, the judgment is affirmed.