## Cincinnati, New Orleans & Texas Pacific Railway Company v. Veatch.

(Decided January 14, 1915.)

### Appeal from Mercer Circuit Court.

1. Carriers—Carriers of Live Stock—Actions—Pleading.—Where live stock is delivered to a carrier for transportation in good condition, and the carrier fails to deliver it at destination in like condition, the carrier is liable unless the loss or injury was caused by the act of God or the public enemy, the inherent nature and qualities of the animals themselves, or the act or fault of the shipper. Hence it is unnecessary to allege that the loss or injury was due to the carrier's negligent act; and an allegation of negligence is mere surplusage.

2. Trial—Taking Case or Question From Jury—Inferences From Evidence.—It is the peculiar province of the jury to draw inferences from proven facts.

3. Appeal—Determination and Disposition of—Reversal—Amount or Extent of Recovery.—A judgment will not be reversed for a trivial excess in the amount thereof.

E. H. GAITHER for appellant.

C. E. RANKIN for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

J. T. Veatch delivered to the Cincinnati, New Orleans & Texas Pacific Railway Company, at Somerset, on December 5, 1912, nine hogs, one bull, twenty-nine head of cows, and four calves, which shipment was accepted by the carrier, and a contract entered into for its delivery at Cincinnati.

On April 24, 1913, Veatch sued the railway company in the Mercer Circuit Court to recover damages for injuries to the live stock so shipped, and, upon a trial, there was a verdict and judgment for $266.00. The railway company appeals.

1. It was alleged in the petition that the cattle were injured in a wreck; and appellant contends that having pleaded that the cattle were so injured, and having failed to prove the charge, the plaintiff was not entitled to a recovery

The well-settled Kentucky rule is that where a shipment of live stock is accompanied by the owner or his agent, and injury results during transit, the burden is upon the owner to show how the injury occurred, i. e., whether it was caused by some actionable negligence upon the part of the carrier; but where the live stock is not accompanied by the owner or his agent, and injury results during transit, then, when the owner shows that the live stock was in good condition when delivered to and accepted by the carrier for shipment, and was in a damaged or injured condition when delivered by the carrier to the consignee at the place of destination, the burden shifts; and unless the carrier can show that the injury was due to the inherent nature, propensities or viciousness of the animals, or other relieving cause, the carrier is liable for such injury. I. C. R. R. v. Word, 149 Ky., 229; McCampbell, &c. v. L. & N., 150 Ky., 723; 150 S. W., 987; L. & N. v. McClintock, 151 Ky., 455, 152 S. W., 253; I. C. R. R. v. Howard, 152 Ky., 308, 153 S. W., 427; L. & N. v. Cecil, 155 Ky., 170, 159 S. W., 689; C., N. O. & T. P. v. Smith, 155 Ky., 481, 159 S. W., 987.

Under this rule, as plaintiff did not accompany the shipment, it was sufficient for the plaintiff to allege and prove the delivery to and acceptance by the carrier of the live stock in good condition; and that the carrier failed to deliver the same at destination in like condition. It then devolves upon the carrier to show that the injuries were due to the act of God or the public enemy, or to the inherent nature and qualities of the live stock, or to the act or fault of the shipper himself. Unless the carrier can show this, it is liable for loss or injury regardless of whether it was negligent or not. It was therefore surplusage for the plaintiff to allege

in his petition any negligence upon the part of the carrier. L. H. & St. L. v. S. S. H. & C. Co., 157 Ky., 772.

2. It was shown in evidence for the defendant company that the bull and the nine hogs were loaded in one compartment of a stock car, the bull being tied; and the cows and calves loaded in another compartment of the car. That they were loaded a short time before 3:15 P. M., the hour at which the train was due by which the car was expected to be moved. That on the day in question, however, the train was delayed, and that between four and five o'clock section men working in the vicinity discovered a commotion among the cattle in the car. That, upon investigation, it was disclosed that one of the cows was fighting the others, and that the non-combatants were huddled together in one end of the car. That the men got the cattle quieted down and left them. That none of them at that time had been injured apparently, except that one of the calves was down. That shortly after five o'clock the yard foreman, hearing a tumult in the car, notified the railroad agent, and they went together to the car. That they found the militant cow still fighting, and the remainder of the cows huddled and entangled and piled together in the end of the car. That the crew of section men was sent for, and the cattle unloaded from the car. That seven cows and three calves were either dead or so badly injured that it was necessary to kill them. The remainder of the shipment was forwarded to destination; but one of the cows so forwarded was crippled, and brought only four dollars when sold.

It is contended by appellant that it proved that the injuries to the animals were due to the inherent nature and propensities thereof, and that it thereby absolved itself from legal liability, and was entitled to a directed verdict at the close of its evidence.

But appellant errs in stating the effect and extent of the evidence introduced by it. It was not directly proven that the ten dead animals were killed by the militant cow. It was proven that one of the cows had mobilized and was on the warpath; and it was proven that there were found in the car ten dead animals; but it was not directly proven that the militant cow killed them, or exactly how they were killed.

It must be conceded that the evidence for the railway company was sufficient to raise a strong inference

of fact that the dead cattle were killed by reason of the attacks of the enraged cow. However, it is in evidence that the dead cattle were skinned and there were on their hides no indications that any of them were gored to death, and their death may have resulted in some other manner.

Where a fact is sought to be established by indirect evidence, it is the peculiar province of the jury to draw inferences from the facts proven; and where more than one inference may reasonably be drawn, or where a certain inference may reasonably be drawn or declined to be drawn, the matter is for the jury. It is only when all the circumstances taken together inevitably point to and afford but one reasonable explanation, that such evidence may be taken as conclusively raising an inference of the fact sought to be established thereby. So, whether the railway company showed that the injuries to the animals were caused by the militant cow, and thereby absolved itself from legal liability, was for the jury. Adams v. Tiernan, 5 Dana, 394; Dolfinger & Co. v. Fishback, 12 Bush, 474; Cent. Coal & Iron Co. v. Owens, 142 Ky., 19, 133 S. W., 966; Bergman v. Solomon, 143 Ky., 581, 136 S. W., 1010; 38 Cyc., 1517.

Plaintiff introduced evidence showing that none of the cows were vicious, and the jury doubtless believed that seven cows and three calves were a few too many cattle for one cow to kill in so short a time without using her horns, and therefore doubted the inference thus raised by defendant's evidence, and it was the province of the jury to weigh the evidence.

3. It is insisted that the verdict is excessive.

Defendant's evidence shows that of the cattle killed seven were cows and three were calves and there was one cow crippled that sold for $4. The bill of lading stipulated for a valuation of not exceeding $30 on the cows and $5 on the calves shipped. At this rate, according to defendant's evidence, the verdict should have been for only $251. But plaintiff contends that the witnesses on both sides used the words "cows" and "calves" indiscriminately and that the jury could have found that all the missing cattle were cows, and thus finding could have allowed a greater sum than they did.

However, it has been many times held that a judgment will not be reversed for a trivial excess in the amount thereof, where the cost of another trial would

exceed the reduction to which appellant would be entitled. Smoot v. Wainscott, 28 R., 233, 80 S. W., 176; Gates v. Davis, 28 R., 490, 89 S. W., 490; Nickels v. Frankfort, 33 R., 918, 111 S. W., 706; Gambrell v. Gambrell, 130 Ky., 174, 113 S. W., 885; Kelly v. Adams Express Co., 134 Ky.. 208, 119 S. W., 747; Rector v. Rector, 137 Ky., 76, 122 S. W., 518; City of Columbus v. Bank of Columbus, 122 S. W., 835; Petersburg Coal Co. v. Bishop, 157 Ky., 219, 152 S. W., 817.

Judgment affirmed.