## Louisville & Nashville Railroad Company v. Taylor.

(Decided October 29, 1918.)

### Appeal from Warren Circuit Court.

Carriers—Shipment of Live Stock—Liability of Carrier.—A common carrier of live stock is an insurer of their safe transportation and delivery, and is liable for the death or any injury to the stock, unless same was produced by the act of God, by the public enemy, by the inherent nature or vice of the animals, fault of the shipper, by public authority, or by disease or sickness of the animals, which proximately and without negligence of the carrier produced the loss. If, however, the shipment is accompanied by the owner or his agent, or if the loss is produced by sickness or disease of the animals, the burden in either case is upon the shipper to show that the loss was due to some negligence of the carrier, provided always that the stock was in good condition when loaded.

JAMES J. DONOHUE, BENJAMIN D. WARFIELD and SIMS, RODES & SIMS for appellant.

T. W. and R. C. P. THOMAS and JOHN B. GRIDER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On September 5, 1916, appellee (plaintiff below) delivered to appellant (defendant below) at Bowling Green, Kentucky, one car load of live stock to be shipped to the Bourbon Stock Yards in Louisville, Kentucky, which defendant, as a common carrier, agreed and undertook to do. The consignment consisted of one hundred and nine hogs, five head of cattle and twenty-seven sheep and goats, the latter occupying an upper tier in the car, which had been constructed for that purpose. When the shipment arrived at its destination thirty-one of the hogs were dead, and claiming that others in the car were damaged and injured, plaintiff brought this suit in the Warren circuit court to recover the value of the dead hogs and the damage and injury alleged to have been suffered by the others, which in his petition he esti-

mated at $550.00. The allegations of the petition were denied, and upon trial there was a verdict in favor of the plaintiff for $504.00, upon which judgment was rendered, and complaining of it the defendant prosecutes this appeal.

Neither the shipper nor any agent of his accompanied the shipment, and it is also necessary to note that there is no evidence of the death of any of the hogs having been caused by any disease, nor were any of those alleged to have been injured afflicted with any disease.

Several errors are relied upon for a reversal, but we do not consider any of them of sufficient materiality to demand discussion, except (1) the failure of the court to direct a verdict for the defendant, and (2) error in instructions given to the jury. The (1) objection seems to be based upon the idea that defendant's liability must spring from some act of negligence on its part proximately producing the loss or injuries complained of, and in the absence of any such, as defendant contends, there is no liability. The (2) ground referred to presents in another form the same contention, since the instruction complained of did not submit to the jury the issue of negligence on the part of the defendant. These contentions being so closely related, we will dispose of them without separate considerations. The objectionable instruction says:

"The court instructs the jury to find for plaintiff the damages sustained by him on account of the death and injury to the hogs in controversy, not exceeding the sum sued for, $550.00, unless they shall believe from the evidence that the death of the hogs that were dead when they reached their destination, and the loss in weight, if any, of the remainder of said hogs, was due to the inherent nature and propensities of the animals themselves, or to their being overcrowded in the car by plaintiff, if they were overcrowded, considering the condition of the hogs, and the condition of the weather, at the time of the shipment, in which latter event they will find for the defendant."

The universal as well as ancient rule governing the liability of common carriers of freight, both animate and inanimate, is that the carrier is an insurer of the safe transportation of the freight to its destination, unless the damage was the proximate result of and solely

produced by the act of God, the act of the public enemy, the inherent nature or quality of the thing transported, the fault of the shipper, or perhaps some others which have found recognition in different jurisdictions, and which are not necessary to here enumerate. The reason for this high degree of liability is well stated in 10 Corpus Juris 110, thus:

"The public character of the carrier's duties; the inequality in the footing of the carrier and the shipper; the absolute possession and control of the property by the carrier while in course of shipment, and the entire separation of the shipper from his property while in course of transportation and his lack of opportunity to protect it by any efforts of his own; the opportunity of the carrier for embezzlement and for fraudulent collusion with others; and the ordinarily exclusive possession by the carrier of the means of evidence, and the difficulty, if not impossibility, of proving the fraud or negligence by which the goods were lost."

This court has uniformly and consistently upheld and applied the above general rules, as will be seen from an examination of the cases of Illinois Central Railroad Co. v. Word, 149 Ky. 229; McCampbell, Figg & Burnett v. Louisville & Nashville Railroad Co., 150 Ky. 723; Louisville & Nashville Railroad Co. v. Pedigo, 129 Ky. 133; Louisville & Nashville Railroad Co. v. Cecil, 155 Ky. 170; C., N. O. & T. P. Ry. Co. v. Veatch, 162 Ky. 136, and Merchants Transfer Co. v. Kiser, 179 Ky. 324. These authorities will show that the responsibility of the carrier of live stock is not in all respects the same as it is with reference to the transportation of goods. The chief differences between liability with respect to carriers of the two kinds of freight is that the carrier does not insure or warrant live freight against the consequences of its own vitality or against the consequences of injuries inflicted through or by the inherent vices possessed by the particular kind of live freight being transported, and in addition the further difference is recognized, by this court at least, that the carrier of living freight is not liable except in case of negligence proximately contributing thereto, for the death of any of the freight afflicted with sickness or disease, or for any injuries because of sickness or disease, and the burden in such cases is upon the shipper to prove negli-

gence contributing thereto on the part of the carrier in all cases where such sickness or disease is shown to exist. Furthermore, the Kentucky rule is that, if the shipment is accompanied by the owner or his agent, the loss or damage must be shown to have resulted from some negligence of the carrier. The ground for these exceptions to the liability of the carrier as an insurer is that the reason for applying such high degree of liability does not exist where the shipper accompanies the shipment and when the live stock is shown to have been afflicted with disease. Substantiating this, we find this court, in the Veatch case, *supra,* saying:

"The well-settled Kentucky rule is that where a shipment of live stock is accompanied by the owner or his agent, and injury results during transit the burden is upon the owner to show how the injury occurred, i. e., whether it was caused by some actionable negligence upon the part of the carrier; but where the live stock is not accompanied by the owner or his agent, and injury results during transit, then, when the owner shows that the live stock was in good condition when delivered and accepted by the carrier for shipment, and was in a damaged or injured condition when delivered by the carrier to the consignee at the place of destination, the burden shifts; and unless the carrier can show that the injury was due to the inherent nature, propensities or viciousness of the animals, or other relieving cause, the carrier is liable for such injury. I. C. R. R. Co. v. Word, 149 Ky. 229; McCambell, &c. v. L. & N. R. R. Co., 150 Ky. 723, 150 S. W. 987; L. & N. v. McClintock, 151 Ky. 455, 152 S. W. 253; I. C. R. R. v. Howard, 152 Ky. 308, 153 S. W. 427; L. & N. v. Cecil, 155 Ky. 170, 159 S. W. 689; C. N. O. & T. P. v. Smith, 155 Ky. 481, 159 S. W. 987."

The same rule is stated in practically the same terms in the opinion rendered in the Word case, *supra,* and in that opinion, with reference to the rule where sickness of the live stock or its diseased condition is involved, the court added:

"But where a recovery is sought for sickness of live stock in transit, or for death resulting from sickness, the burden does not shift, but remains all the while upon the plaintiff, for the sickness or death from sickness of the animal may be due to a diseased condition existing

at the time of or prior to its shipment, though undiscovered by its owner or the carrier, or may be due to atmospheric, climatic or other conditions, over which the carrier has no control, and for which it would in no event be responsible."

The doctrine as laid down in the Word case is copied with approval in the opinion of the court rendered in the Cecil case, *supra*, and others following it; so that at present there is no doubt as to the liability of the carrier of live stock under the various conditions named.

In the instant case the stock was loaded into the car about ten thirty a. m., on the day of the shipment. At twelve five it left Bowling Green upon what is called in the record a "banana special," and it arrived in South Louisville, the terminal of the defendant in that city, at four thirty p. m. About one hour was consumed in breaking up the train, inspecting the cars and attaching an engine to the shipment in question so as to transport it to the Bourbon Stock Yards in East Louisville, a distance of about four and one-half miles. It required one hour to make that trip from South Louisville to East Louisville, something like thirty minutes of which was due to a delay because of an obstructed track with a freight train. While in South Louisville, and while waiting for the removal of the freight train obstruction, the car containing the shipment was standing still, and so far as the evidence shows, in the sun. It was a very hot day, and the animals were very fat, but it is quite conclusively shown that all of the hogs were in good condition when loaded into the car, and free from disease. The trip from Bowling Green to South Louisville was made in a considerably shorter time than required by the regular schedule, and the same is true of the trip from South Louisville to the Bourbon Stock Yards. The only acts of the defendant about which there is any contrariety of testimony bearing upon the negligence of the defendant are the delays at Bowling Green between the time defendant took charge of the car and its departure for Louisville, the standing of the car for one hour in South Louisville without being moved to the Bourbon Stock Yards, and the time consumed in going to the latter place from South Louisville. Defendant's testimony is to the effect that these delays were usual, ordinary and unavoidable,

while plaintiff claims that due and proper care required defendant to keep the stock moving, regardless of what might have been its regulations in the premises, so as to prevent any suffocation and consequent injury because of the excessive heat. But, whatever may be the true solution of these issues, we have a case where, as stated, the shipper did not accompany the freight. No disease or sickness of the animals enter into the case. The stock was in good condition when it was accepted by the carrier, and in the condition complained of when it reached its destination. Under the law so firmly fixed, as we have seen, the burden was upon the defendant to relieve itself of the liability as an insurer because of some one or more of the grounds hereinbefore referred to. The authorities, *supra*, furthermore establish the law to be that for the carrier to be excused as an insurer because of any of the exceptions, he must show that such exception was the immediate or proximate, and not the remote cause of the loss, for if such cause, combined with actionable negligence on the part of the carrier, produced the loss, the latter will be liable. 10 C. J. 125.

Manifestly in this case the only two excusing causes which could in any manner be relied upon are the act of God because of excessive heat, and the inherent nature of the animals shipped. But, since the burden was upon the defendant to show that the loss resulted from one of these, and it having failed to do so, at least according to the finding of the jury to which those issues were submitted by the instruction complained of, we see no grounds for disturbing the verdict.

It must be admitted that the facts of this case forcibly illustrate what in some quarters are considered to be the harsh rules of the law imposing liability upon common carriers, but we are not at liberty at this late day to undertake a modification of them. After all, the harshness is not so severe as it would appear. As an illustration, in the instant case the defendant had the right to introduce testimony by veterinary surgeons, and others competent to testify upon the subject, to show, if it were true, that the crowded condition of the stock (which would have been a fault of the shipper and would have excused the defendant) or the excessively hot weather (which was an act of God) produced the in-

juries complained of, and if done it would have met the burden which the law imposed upon it and thereby re-lieved itself of liability. It would have been easy to: prove by the records of the weather bureau of the government  the temperature on that day, and witnesses with scientific or experimental knowledge upon the subject could have testified concerning the effect of the weather upon the condition of the hogs in the car.

The instruction complained of in this case is almost a verbatim copy of the one given under similar circumstances in the case of McCampbell, Figg & Bennett v. L. & N. R. R. Co., *supra,* which this court approved as embodying the true rule upon the subject.

Perceiving no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.