# Louisville & Nashville Railroad Company v. Hunter.

(Decided September 26, 1919.)

## Appeal from Spencer Circuit Court.

1. Carriers—Shipment of Live Stock—Condition of Stock.—Where no one accompanies a live stock shipment and injury results in transit the shipper makes out a prima facie case when he shows the stock was in good condition when delivered to the carrier, and in a damaged condition when it reached its destination, and the carrier must explain the cause of the injury, and it can only exempt itself from liability by showing that the damage was brought about by the act of God, or the public enemy, or because of the inherent nature, propensities or viciousness of the animals, or to the act or fault of the shipper.

2. Trial—Question for Jury.—Where facts are sought to be established by indirect evidence it is the province of the jury to draw inferences from the proven facts, and where more than one inference may reasonably be drawn, or where a certain inference may be drawn or declined to be drawn, the matter is for the jury.

3. Appeal and Error—Amount of Recovery.—A verdict of $1,200 for damage to a shipment of live stock held, under the evidence, not to be excessive.

WILLIS, TODD & BOND and BENJAMIN D. WARFIELD for appellant.

BECKHAM & GILBERT for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

In October, 1916, appellee delivered to appellant at Wakefield, Ky., twenty-three mules and four horses for transportation to Abbeville, S. C., distant 558 miles. Upon their arrival, October 22, due to delays, rough handling, neglect and mistreatment, as alleged, the stock was sick, sore, famished, crippled, bruised and damaged, as the result of which condition three of the animals died. The stock was delivered at Wakefield in good order and condition, and no one accompanied it upon its journey.

To reverse a judgment in appellee's favor many points are urged by appellant, chief of which is the failure to give a peremptory instruction.

The allegation of the petition as to the condition of the stock upon arrival at its destination finds support in appellee's evidence. The stock was not assembled just prior to shipment; they had been together from two to

four weeks and had ample time therefore to become acquainted—the introduction of strange mules has a tendency to provoke friction and may result in fights for a short time, but this is soon over. Mr. Wakefield, from whom they were purchased, says he had never fed a quieter bunch; their disposition was good, if that expression carries any weight when applied to a mule. The mules were well broken, from four to eight years old, and appellee states that in examining them in the pen prior to their purchase they appeared very gentle; he saw no evidence of their being wild or vicious.

For appellant, the conductor of the train handling the car from Wakefield to Louisville, testified that the stock was kicking and yelling when they placed the car in the train—the horses were kicking the mules. The veterinarian at Louisville applied the Mallein test, found stock in good shape, says he believes the mules were wild. Another witness for appellant testified that he saw the stock after it had been placed in the pens at Atlanta. He says when he first saw them the mules were fighting "more or less," but the second time they had become more or less quieted. Two or three were coughing—had shipping colds—but they were not sick enough to be taken out.

Where no one accompanies the stock, and injury results in transit, the rule in this state is that the shipper makes out a *prima facie* case when he shows that the animals were in good condition when delivered to the carrier, and in a damaged or injured condition when delivered by the carrier to the consignee; thereupon the burden is cast upon the carrier to show that the cars in which the stock was shipped were in good condition and suitable for that purpose, were handled with reasonable dispatch and were not subjected to any rough or improper treatment during the journey, and the carrier in addition must explain the cause of the injury to the stock, and it can only exempt itself from liability by showing that the injury or death was brought about by the act of God, or the public enemy, or because of the inherent nature, propensities or viciousness of the animals themselves, or to the act or fault of the shipper. L. & N. R. R. Co. v. Pedigo, 129 Ky. 661, 113 S. W. 116; I. C. Ry. Co. v. Word, 149 Ky. 229, 148 S. W. 949; McCampbell, etc., v. L. & N. R. R. Co., 150 Ky. 723, 150 S. W. 987; L & N. R. R. Co. v.

Cecil, 155 Ky. 170, 159 S. W. 689; C. N. O. & T. P. Ry. Co. v. Smith, etc., 155 Ky. 481, 159 S. W. 987; C. N. O. & T. P. Ry. Co. v. Veatch, 162 Ky. 136, 172 S. W. 89; L. & N. R. R. Co. v. Taylor, 181 Ky. 794, 205 S. W. 934.

Appellee met the requirements of this rule, whether appellant did was a question under the evidence for the jury and the court properly overruled the motion for a directed verdict. It was about one hundred and thirty-seven hours from the time of delivery at the point of origin until the shipment reached its destination—there is evidence that the usual time required for this distance is three days.

The laws of South Carolina required the opthalmic test for glanders—this required twenty-four hours.

The federal 28 hour law prevents the confinement of livestock for a longer period than twenty-eight consecutive hours without unloading in a humane manner into properly equipped pens for rest, water and feed for a period of at least five consecutive hours.

It is doubtful if the three rest periods, all extending considerably over five hours, contributed in any wise to the damaged condition of the stock upon its arrival at Abbeville, though shorter rest periods, and still within the federal law, would have materially reduced the time of the journey.

The evidence as to the vicious nature of the stock, sought to be proved by appellant, was not near so strong as that found in C. N. O. & T. P. Ry. Co. v. Veatch, *supra,* where a real battle was staged and the cattle had to be unloaded. There, as here, the company contended it was entitled to a directed verdict. On this point the court in that case says:

"But appellant errs in stating the effect and extent of the evidence introduced by it. It was not directly proven that the ten dead animals were killed by the militant cow. It was proven that one of the cows had mobilized and was on the warpath; and it was proven that there were found in the car ten dead animals; but it was not directly proven that the militant cow killed them, or exactly how they were killed."

Whether the instances of fighting testified to by appellant's witnesses were sufficient to absolve the carrier from liability, on the theory that this brought about their damaged or injured condition, was clearly for the jury.

What may have happened between Louisville and Abbeville is not shown, other than at Nashville and Atlanta. Where facts are sought to be established by indirect evidence it is the province of the jury to draw inferences from the proven facts, and where more than one inference may reasonably be drawn, or where a certain inference may reasonably be drawn or declined to be drawn, the matter is for the jury.

It is only when all the circumstances taken together inevitably point to and afford but one reasonable explanation, that such evidence may be considered as conclusively raising an inference of the facts sought to be established thereby. C. N. O. & T. P. Ry. v. Veatch, *supra;* Central Coal & Iron Co. v. Owens, 142 Ky. 19, 133 S. W. 966.

Testimony of some of the Abbeville witnesses, introduced by appellee, expressing their opinion as to the cause of the damage to the stock, while improper was not prejudicial.

Complaint is made of the excessiveness of the verdict of $1,200.00. It may have been liberal, but we can not say excessive, inasmuch as three mules valued at $250.00 to $300.00 each, died and it is testified there was a depreciation in value of other mules from $40.00 to $60.00 each.

The court gave three instructions, two offered by appellee, the third by appellant. We find no cause for criticism of these on the part of appellant.

Appellant relies mainly on L. & N. R. R. Co. v. Cecil, 145 Ky. 271, but that case was decided on the theory that the stock was accompanied by the owner or his representative, and upon the return of the case plaintiff filed an amended petition in which it was alleged, in substance, that the stock in question was unaccompanied by him or any one representing him. See the opinion on the second appeal, 155 Ky. 170.

The conclusion herein reached renders unnecessary comment upon the sufficiency of the record raised by appellee.

For the reasons herein stated the judgment is affirmed.