## Illinois Central Railroad Company v. Luther, et al.

## Illinois Central Railroad Company v. Usher, et al.

(Decided May 21, 1926.)

### Appeals from Graves Circuit Court.

1    Carriers—Evidence—Both Shipper and Railway are Bound by Selection of Route Shown in Bill of Lading, and it is Error to Permit Evidence or to Instruct with Reference to Railroad's Duty to Ship by Shorter Route (Interstate Commerce Act, Section 15, as Amended by Act Congress, June 18, 1910, Section 12 [U. S. Comp. Stats., Section 8583]).—Where bill of lading, signed by shipper and railway, showed choice of particular route, both parties are bound by selection, under Interstate Commerce Act, section 15, as amended by Act Cong. June 18, 1910, section 12 (U. S. Comp. Stats., section 8583), in absence of pleading or proof of fraud or mistake, and hence it is error to admit evidence relating to time required to move shipment by another route, or to give instruction that railroad was under duty to ship over most direct route available.

2    Carriers—Instruction that Shipment Over Route Mentioned In Bill of Lading, Signed by Shipper and Railway, was Expressly Agreed on, Should be Given (Interstate Commerce Act, Section 15, as Amended by Act Cong. June 18, 1910, Section 12 [U. S. Comp. Stats., Section 8583]).—Where bill of lading, signed by shipper and railroad, showed choice of particular route, under Interstate Commerce Act, section 15, as amended by Act Cong. June 18, 1910, section 12 (U. S. Comp. Stats., section 8583), court should have instructed that shipment over such route was expressly agreed on.

3.    Carriers—Evidence as to Cost of Reshipping Cattle from Destination to Place Where They were Ultimately Sold should Not be Allowed in Action for Injuries to Cattle in Transit.—In action for

injuries to cattle in transit evidence as to cost of reshipping cattle from destination to some other point in state, where they were ultimately sold, should not be allowed.

4. Carriers—Peremptory Instruction for Railroad, in Action for Injuries to Cattle in Transit, Held Properly Refused, on Proof of Injury to Cattle.—In action for injuries to cattle in transit, defendant's request for peremptory instruction held properly refused, where plaintiff proved injury to cattle.

TRABUE, DOOLAN, HELM & HELM, and ROBBINS & ROBBINS for appellant.

HOLIFIELD, GARDNER & McDONALD for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

These two cases were heard together, both in the trial court and in this court. In the judgment appealed from, W. H. Luther and V. E. Allen recovered of the railroad company $400.00 and Clifton Usher and G. O. McPherson recovered of the railroad company $254.55. In each case the railroad company has, by motion, asked this court to grant an appeal. These suits grew out of a shipment of cattle from Mayfield, to Sesser, Illinois, begun on December 26, 1923. Twenty-two head of cattle and six calves of this shipment belonged to Luther and Allen, and fourteen head were the property of Usher and McPherson. The Luther and Allen cattle were originally shipped from Wingo, Kentucky, to Mayfield. The car was set out at that point, and the Usher and McPherson cattle were put into it. The car containing the two bunches of cattle was then shipped from Mayfield, via Fulton, Cairo and Centralia to Sesser.

Plaintiffs allege that the cattle were injured in transit; that there was an unnecessary delay of twenty-four hours; that the cattle were greatly injured in appearance, and their salable value reduced by reason of this delay; that plaintiffs had extensively advertised a sale of these cattle to be had at Sesser on Saturday, December 29, 1923; that the railroad company had notice of this sale, and that the cattle were being shipped by plaintiffs early enough to reach Sesser in time for the cattle to rest and fill before the sale; that the railroad company failed and refused to transport these cattle over the most direct route from Mayfield to Sesser; that as a result of all this, the cattle were so injured as to not be salable,

and they were not sold, though a large number of bidders were on hand. The railroad company denied all of this. By section 15 of the Interstate Commerce Act (36 U. S. Stats., p. 553; U. S. Comp. St., section 8583) it is provided:

> "In all cases where at the time of delivery of property to any railroad corporation being a common carrier, for transportation subject to the provisions of this act to any point of destination, between which and the point of such delivery for shipment two or more through routes and through rates shall have been established as in this act provided to which through routes and through rates such carrier is a party, the person, firm, or corporation making such shipment, subject to such reasonable exceptions and regulations as the interstate commerce commission shall from time to time prescribe, shall have the right to designate in writing by which of such through routes such property shall be transported to destination, and it shall thereupon be the duty of the initial carrier to route said property and issue a through bill of lading therefor as so directed, and to transport said property over its own line or lines and deliver the same to a connecting line or lines according to such through route, and it shall be the duty of each of said connecting carriers to receive said property and transport it over the said line or lines and deliver the same to the next succeeding carrier or consignee according to the routing instructions in said bill of lading; provided, however, that the shipper shall in all instances have the right to determine, where competing lines of railroad constitute portions of a through line or route, over which of said competing lines so constituting a portion of said through line or route his freight shall be transported."

There were two routes by which these cattle could be transported to Sesser. One was via Illinois Central Railroad to Paducah, thence by C. B. & Q. to Sesser, a distance of approximately 112 miles. The other was via Illinois Central Railroad from Mayfield, through Fulton, Cairo, to Centralia, thence via C. B. & Q. to Sesser, a distance of approximately 208 miles. There was some discussion between these parties and the agent of the rail-

road company relative to the route to be chosen; but the bill of lading, which is signed by both, shows that they chose to ship via Fulton, Cairo and Centralia. Both parties were bound by that selection, in the absence of either pleading or proof of any fraud or mistake, hence it follows that the court erred in admitting evidence relative to what might have been the time required for the movement of these cattle through Paducah, and the court erred in giving to the jury instruction No. 1, wherein the jury was told that it was the duty of the railroad company to transport these cattle over the most direct route available. Instruction No. 3 was erroneous for the same reason.

The railroad company moved the court to give this instruction:

"The court instructs the jury that under the contract between plaintiff and defendant, it is expressly agreed that this live stock should be shipped by the Illinois Central Railroad Company, via Centralia, Illinois, and thence to Sesser, Illinois, via Chicago, Burlington & Quincey Railroad Company."

The court should have embodied the ideas expressed there, in some of the instructions given in the case, which it failed to do.

The court should not have allowed the plaintiffs to introduce evidence showing what it cost them to reship these cattle from Sesser to some other point in Illinois, where they were ultimately sold.

The railroad company moved the court to instruct the jury peremptorily to find for it, which the court refused to do, and which it now says was error; but there was allegation and proof that the cattle had been injured, and in view of what this court has said in the case of C., N. O. & T. P. R. R. Co. v. Veatch, 162 Ky. 136, 172 S. W. 89, and L. & N. R. Co. v. Taylor, 181 Ky. 794, 205 S. W. 934, this motion for a peremptory instruction was properly overruled. The defendant's motion for an appeal in each case is sustained.

The judgment is reversed and the cause remanded for a new trial.