## Louisville & N. R. Co. v. Gibson.

April 23, 1943.

James P. Helm, Jr., and H. T. Lively for appellant.

James T. Robertson for appellee.

Opinion of the Court by Judge Sims—Reversing.

This appeal is from a judgment of $1,480 appellees and plaintiffs below, R. M. and C. W. Gibson, doing business as the Gibson Livestock Company, recovered against the Louisville & Nashville Railroad Company for damages done two carloads of "stocker" cattle by reason of the alleged negligence of defendant in handling the shipment from Eagle Pass, Texas, to Louisville, Kentucky, from August 6 to 10, 1938. The railroad seeks a reversal of the judgment on two grounds: 1. The instructions were erroneous; 2. incompetent evidence was admitted.

Plaintiffs purchased 99 heads of yearling "stocker" cattle (55 heifers and 44 steers) of an average weight of 354 pounds from Jack Mansfield at Eagle Pass, Texas,

through Elrod & Weatherby, commission merchants. The cattle were taken off grass from a large Texas ranch located near the Mexican border, loaded on two 36-foot railroad cars at Eagle Pass by R. W. Weatherby on Aug. 6th, and consigned to the plaintiffs at Louisville, Kentucky, with no attendant accompanying the shipment. There was no delay in the shipment at any point along the route and it kept somewhat ahead of schedule through to its destination at Louisville where it arrived on the morning of Aug. 10th. The stock was rested, fed and watered at Denizen, Texas, and at St. Louis, Mo., as required by government regulations.

Upon arrival in St. Louis on the morning of the 9th, one head was removed dead from the car, and after being yarded there, four others died. Late that afternoon the remaining 94 head were reloaded and arrived in Louisville on the morning of the 10th. The cattle were in such bad shape upon reaching Louisville that they could not be put on the market and plaintiffs' representative had them shipped to Lexington the night of the 10th, where they arrived early on the morning of the 11th, and were put on grass for recuperation.

One calf was in such condition in Louisville that it could not continue to Lexington and plaintiffs had it destroyed on the 12th. Dr. W. A. Smith, a veterinarian in the employ of the L. & N. at the Bourbon Stockyards performed an autopsy on this animal on the 12th and found it slightly bruised with inflamed mucous membranes, bronchial tubes and intestines, and diagnosed its trouble as shipping fever. He further testified that he saw the other calves in this shipment upon their arrival in Louisville and they were "thin in flesh, draggy, stale looking and stiff, with several in the car depressed, showing symptoms of shipping fever," which he said, "happens in an ordinary shipment where they are exposed to conditions."

Dr. W. G. Techenbrock, a veterinarian in the stockyards at St. Louis who inspected stock for the L. & N. at that point, testified that when these calves were unloaded early in the morning of the 9th in St. Louis for feed and water, they were put in open pens with brick floors. Later in the morning he saw that they were getting hot and they were put in shed pens where it was cooler. The thermometer registered 96 degrees in St. Louis that day. He testified that the cattle were stiff,

58

their skin was dry and cracked with a discoloration of the hair and when put in the sun they heated up, all of which convinced him they had recently been dipped; that dipped cattle have not the resistance to heat enjoyed by those not so treated. That if it had been known these cattle had been dipped, they would not have been put in open pens. He diagnosed their trouble as being due to the dipping, as cattle from Texas can ordinarily stand heat. W. E. Eiskant, a foreman at the St. Louis stock-yards with twenty-two years' experience in handling cattle, also testified that these cattle had the appearance of having been recently dipped and were droopy and appeared to be sick.

Plaintiffs' evidence was to the effect that the cattle were in good condition when received by the carrier at Eagle Pass, while they were cut, bruised, skinned and crippled when delivered at Louisville and appeared to have been roughly handled; that the discoloration of their hair was due to dirt and manure picked up in the car. Jack Mansfield, who raised the cattle, when asked if they had been dipped prior to shipment, testified they "had not been dipped *immediately* (our italics) prior to shipment." However, R. W. Weatherby, one of the commission merchants who bought the cattle and loaded them, testified they had not been dipped prior to shipment and other witnesses testified the cattle had no appearance of having been dipped and that their injuries were the result of cuts and bruises received in shipping and not sickness.

Plaintiffs by their petition as amended sued the railroad for $2,142.75 for damages in bruising, scratching and crippling the cattle caused by its alleged negligence in roughly handling them. The answer was a denial, followed by an affirmative plea that the damages to the cattle were due to the weather conditions, which was an act of God, or to the inherent nature and propensities of the cattle, or to the negligence of the shippers, their agents or representatives.

From the synopsis of the evidence above recited, it is seen there is a direct conflict in the proof as to whether the damages to the cattle resulted from their being bruised, cut, scratched and crippled on the trip, or from illness caused by heat and dipping.

The rule in this jurisdiction is that where a ship-

ment of livestock, unaccompanied by the shipper or his representative, is shown to be in good condition when accepted by the carrier and reaches its destination in a damaged condition, the shipper may recover for the damages without pleading or proving negligence on the part of the carrier, and the latter has the burden of proving that the damage was the proximate result of an act of God (excessive heat in this instance), or the inherent nature, propensities or vices of the animals, or sickness or other relieving cause. Cincinnati, N. O. & T. P. R. Co. v. Veatch, 162 Ky. 136, 172 S. W. 89; Louisville & N. R. Co. v. Taylor, 181 Ky. 794, 205 S. W. 934.

The court instructed the jury in effect that if they believed the cattle were received by the carrier in good condition for transportation and that six head died en route and others were bruised and cut, the verdict should be for plaintiffs for the difference in the value between their sound and damaged condition; unless they believed the death of some and injuries to other of the cattle were due to the natural effect of the weather or the manner in which the shipper loaded them or to the inherent nature of the animals, in which event the verdict should be for defendant.

The instructions were erroneous because they did not cover two material points on which defendant introduced proof, to-wit: That the cattle had been dipped recently before they were shipped, which made them peculiarly susceptible to heat and caused them to become sick, and that they were suffering from shipping fever upon reaching their destination. There was no testimony by the defendant as to what caused the death of the animal found dead in the car upon arriving in St. Louis and it is liable for the value of that calf. Also, it is liable for the death or any damages done the cattle by cuts, bruises or scratches, or any other injuries received in shipment which was not proximately caused by dipping, hot weather, sickness or the inherent nature of the animals. Upon another trial, in addition to the instructions given on the first trial, the court will submit the question to the jury whether or not the dipping, if any, of the cattle caused them to become sick in transit and whether or not the death of the four in St. Louis, the one destroyed in Louisville and the damages to those delivered at their destination in Louisville were caused by heat or sickness; if so, the plaintiff cannot recover

for the death or the damages to any of the cattle caused thereby.

Plaintiffs insist that as the defendant offered no instruction covering the dipping or the sickness of the cattle, it cannot now complain of the court's failure to give such instruction. But here the court attempted to give the whole law of the case and it was not incumbent upon defendant to offer an instruction. The plaintiffs tendered instructions on the whole case which the court refused, and then proceeded to instruct on the entire case, hence it was incumbent upon the judge to properly instruct on all issues. This he failed to do and defendant, having saved the proper exceptions to an erroneous and prejudicial instruction, is entitled to have the judgment reversed. Louisville, H. & St. L. R. Co. v. Roberts, 144 Ky. 820, 139 S. W. 1073; Prudential Ins. Co. of America v. Sisson, 276 Ky. 506, 124 S. W. (2d) 739.

Defendant contends that the market price for the cattle on the day of their delivery in Louisville, Aug. 10th, was not proved. It was both proved and stipulated as is shown by an examination of the record. Nor can we agree with defendant that a carbon copy of its "arrival notice" showing the weight of these cattle was not competent evidence without a preliminary showing that the original could not be located. It is evident that this paper was made at the same time the original was created and the rule is that when multiplate instruments are made at one writing, each is an original as regards the best evidence rule, Gus Dattilo Fruit Co. v. Louisville & N. R. Co., 238 Ky. 322, 37 S. W. (2d) 856. Also this paper contains the weight upon which plaintiffs paid the freight charges shown thereon, and as it is marked paid with a stamp bearing defendant's name and that of its cashier, we have no hesitancy in holding that the court properly admitted it in evidence. Some complaint is made as to an alleged error in the instructions of $2.78 in reference to the damages. This is too trifling to be considered; besides, the chances are that such error will not occur on another trial.

The judgment is reversed for proceedings consistent herewith.