# McCampbell, Figg and Burnett v. Louisville & Nashville Railroad Company.

(Decided November 26, 1912.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Carriers—Shipment of Lambs—Clerical Error.—The proof for the plaintiff showing that 247 lambs were shipped in P. C. C. & St. L. car 658165, proof for the defendant was admitted accounting for P. C. C. & St. L. car, 658135 containing the same number of lambs shipped at the same time by the same consignor to the same consignee; Held on appeal it will be presumed that the figure "3" was a clerical error for the figure "6."

2. Carriers—Shipment of Lambs—Loss by Hot Weather—Act of God.—A carrier is not liable for a loss on lambs by reason of the intensely hot weather and beyond its control, weather conditions being the act of God.

3. Carriers—Loss of Live Stock.—The carrier is not liable for a loss on live stock due to the inherent nature, weakness or vice of the stock.

THOS. C. MAPOTHER for appellant.

HELM & HELM, BENJAMIN D. WARFIELD, C. H. MOORMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

McCampbell, Figg and Burnett shipped from Louisville, Kentucky, on July 29, 1911, a car load of 247 lambs to Jersey City, New Jersey, the Louisville & Nashville Railroad Company issuing a through bill of lading. The lambs reached Pittsburg in good condition, but when they reached Jersey City eleven were dead, one was crippled, and the remainder had lost weight, and were in bad condition, so that they were sold at a loss of $332. The shippers brought this suit against the railroad company to recover damages and on a hearing of the case before a jury, there was a verdict in their favor for the value of the eleven dead lambs and the one crippled lamb, less what the carcasses of these lambs brought in Jersey City. The circuit court entered judgment on the verdict and the plaintiff appeals insisting that they should have recovered for the loss on the remainder of the lambs.

The proof shows that the weather was very hot and that the lambs suffered much from heat. It also shows that there was no delay in their shipment; that they went through on schedule time, and were delivered promptly in Jersey City. The proof for the railroad company is to the effect that the car was properly handled and that there was no negligence on the part of the carriers in handling the shipment. No objection appears to have been made to this evidence in the circuit court, but it is insisted here that all the testimony for the railroad company should be disregarded and that the plaintiffs were entitled to a peremptory instruction; because the proof shows that the car in which the lambs were delivered at Jersey City was P., C., C. & St. L. 658165, while the proof for the defendant all refers to the car as P., C., C. & St. L. 658135; and it is said that the defendant shows the proper handling of one car when the lambs were shipped in another. But the record shows that the car which the defendant's witnesses refer to contained 247 lambs shipped by McCampbell, Figg and Burnett from Louisville to the same consignee at Jersey City, and we must presume now that the figure "3" was merely a clerical error for the figure "6;" because there is no proof that there were two loads of 247 lambs in the train sent by the same shippers to the same consignee in a P., C., C. & St. L. car.

It is also insisted that the court misinstructed the jury. The instruction complained of is as follows:

"If the jury believe from the evidence that the defendant company received the stock in the evidence referred to in good condition at Louisville, Kentucky, for transportation to Jersey City and that it was delivered by the defendant or connecting carrier at its destination in a damaged condition, your verdict should be for the plaintiffs, unless you further believe from the evidence that said damaged condition was due to *the inherent nature of the stock or the weather conditions prevailing between the date of its reception at Louisville and its delivery at Jersey City,* which were beyond the control of the defendant company and its connecting lines, in either of which events, the law is for the defendant and the jury should so find."

The part of the instruction complained of are the words placed above in italics. In Hutchinson on Carriers, section 306, the rule as to the liability of a carrier in the transportation of live stock is thus stated:

"In the transportation of live stock, in the absence of negligence, the carrier is relieved from responsibility for such injuries as occur from or in consequence of the vitality of the freight. He does not absolutely warrant the live freight against the consequences of its own vitality. Animals may injure or destroy themselves or each other; they may die from fright or from starvation, or they may die from heat or cold. In all cases, therefore, where injuries occur by reason of the inherent vices, or natural propensities of the animals themselves, the carrier is relieved from responsibility if he can show that he has provided all suitable means of transportation, and exercised that degree of care which the nature of the property requires."

We practically adopted this rule in L. & N. R. R. Co. v. Pedigo, 129 Ky., 133, where we said:

"So, in Kentucky, the rule is, as at common law, that a railroad company or other common carrier undertaking to transport live stock becomes an insurer of its safe delivery, except where injury to or the loss of such live stock results from the act of God or the public enemy, or from the inherent nature, propensities or viciousness of the animals themselves."

In the recent case of I. C. R. R. Co. v. Word, 149 Ky., 229, we reviewed the previous cases and there laid down the following rules:

1. Where the live stock is accompanied by the owner or his agent or representative, and injury results while in transit, the burden is upon the owner to show how the injury occurred, that is to say, that it was due to some negligence of the carrier.

2. Where the live stock is not accompanied by the owner or his agents or representative, and injury results in transit, it is incumbent upon the owner to show that the stock, when delivered to the carrier, was in good condition, and when received from the carrier at its destination, was in a damaged or injured condition, thereupon the burden shifts and it devolves upon the company to show that the cars in which the stock was shipped, were in good condition and suitable for that purpose, were handled with reasonable despatch and were not subjected to any rough or improper treatment during the journey, and the company, in addition, must satisfactorily account for the injured condition of the stock; and, unless the carrier can show that such injury is due to some inherent vice of the animal, the fact that

it is injured will be accepted as *prima facie* evidence of negligence on the part of the carrier.''

When in this opinion we used the words ''some inherent vice of the animal,'' we meant the same thing as in the Pedigo case when we used the words ''the inherent nature, propensities or viciousness of the animal;'' and we did not mean to modify what we had often before held that the carrier is not liable for an injury resulting from the act of God and beyond its control. The weather conditions are the act of God. The instruction of the court was, therefore, proper in view of the proof and the verdict of the jury is warranted by the evidence.

Judgment affirmed.