## Louisville & Nashville Railroad Company v. Crain.

(Decided October 29, 1920.)

Appeal from Jefferson Circuit Court
(Common Pleas, Division No. 2).

1. Carriers—Duty to Furnish Sufficient Cars.—A railroad company is under a legal duty to maintain sufficient cars and equipment to meet the normal demands of the traffic, and to be able to furnish to shippers, when seasonably requested, the number of cars needed. If it fails in this respect it may be required to respond in damages to any shipper who has suffered loss thereby, but is not liable in case there is an unprecedented and unexpected press of business or an unexpected or unforeseen occurrence preventing it from furnishing the cars which could not have been anticipated and avoided by the exercise of ordinary care.

2. Carriers—Duty to Furnish Cars.—In the absence of a contract or a statute to the contrary a common carrier is required to exercise only reasonable diligence to furnish cars to a prospective shipper on request and to do so within a reasonable time thereafter.

3. Carriers—Damages for Delay in Shipment.—Such carrier is liable in damages for delays in shipments or delays in furnishing cars upon request only when such delays could have been avoided by the exercise of ordinary care and they are not held in such cases to the same high degree of care as they are in the safe transportation of a shipment to its destination.

4. Carriers—Duty to Furnish Cars—Question for Jury.—Ordinarily it is a question for the jury to determine whether the carrier has or has not exercised reasonable diligence in furnishing cars after request or in promptly transporting freight; but when the carrier relies in avoidance upon the affirmative defense of an act of God or other unforeseen occurrences as an excuse for such delays and the proof establishes the defense without material contradiction it is the duty of the court to instruct the jury accordingly and to take from its consideration the damages claimed as resulting from such delays.

5. Carriers—Shipment of Live Stock—Insurer.—A carrier in the shipment of live stock, unaccompanied by the owner or his agent, is an insurer of their safe delivery unless the injury resulted from an act of God, the public enemy, the inherent nature, propensities, or viciousness of the animals themselves, or the negligence of the plaintiff.

6. Carriers—Negligence.—In a suit against a carrier for damages growing out of its alleged negligence and an affirmative defense in avoidance is relied on which is supported by testimony it is the duty of the court to give to the jury a concrete instruction based upon such defense.

7. Carriers—Shipment of Live Stock—Negligence.—Defendant, a common carrier, was sued to recover damages because of alleged negligence in the shipment of live stock. One defense was that defendant was prevented from promptly furnishing the cars and from promptly transporting the shipment because of a sudden and unprecedented cold spell which was accompanied with deep and continuous snows, which had the effect of paralyzing railroad transportation to such an extent as prevented its promptness in the matters complained of, which defense the testimony established without material contradiction. Held, that it was the duty of the court to sustain defendant's motion for a peremptory instruction directing the jury to find for it upon the issue as to damages growing out of such delays.

BENJAMIN D. WARFIELD and MOORMAN & WOODWARD for appellant.

THOMAS C. MAPOTHER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Plaintiff and appellee, J. B. Crain, seeks by this suit to recover from the defendant and appellant, Louisville & Nashville Railroad Company, the sum of $1,380.63, alleged to have been sustained by him on the shipment of four car loads of stock from Mitchellsburg, Ky., to Louisville, Ky., the first car being shipped on December 12, 1917, and the other three two days thereafter. The damages sued for were produced, as alleged, by the negligent failure of defendant to furnish cars for the shipment of the stock (consisting mainly of hogs) and for unreasonable delay in transporting them after the cars were loaded and received for shipment, and in negligently handling the shipments so as to cause the death of some of the animals and the crippling of others. The items of damage claimed because of the respective delays consisted in an excessive shrinkage in weight of the animals shipped and in compelling plaintiff to sell them on a lower market than he could and would have done had there been no delay. There is also a claim for an extra feed bill because of a failure to furnish the cars in time, and likewise an item for the value of the stock killed and for the damage done to those crippled. The answer denied the negligence charged as well as the damages claimed and pleaded affirmatively that the delay which did occur both in furnishing the cars and in the transportation of the shipments was due to an act of God, consisting in an extraordinary and unprecendented fall in temperature accompanied "with the deepest snow ever known, and the weather was excessively cold, thereby retarding the operation of trains and the regularity of transportation," because of which it could not with reasonable, or even extraordinary diligence, deliver the ordered cars any sooner than was done nor could the transportation of them have been made with any greater dispatch than it was. A reply made the issues and upon trial there was a verdict and judgment in favor of plaintiff for the sum of $500.00, to reverse which defendant prosecutes this appeal.

It is urged for reversal: (1) That defendant's motion for a peremptory instruction made at the close of plaintiff's testimony and renewed at the close of all the testimony should have been sustained; (2) the admission of incompetent testimony by plaintiff over defendant's objections; (3) the verdict is flagrantly against the evidence, and (4) error of the court in giving and refusing instructions. At the outset it may be said that the record shows, and which is agreed to by attorneys, that the prin-

cipal item of damage grows out of the alleged delay in failing to furnish the cars for the shipment of the stock after plaintiff notified defendant's agent at Mitchellsburg to procure them. There is no evidence of any agreement by the agent to obtain the cars for any particular time. The only request made to her was that plaintiff desired the cars for the shipment of his stock and there is no intimation of any delay on her part in notifying the proper agents of defendant to furnish them. Under such circumstances it was the duty of the defendant to furnish them within a reasonable time after the request to do so. According to the proof a reasonable time under usual and ordinary conditions in this case was twenty-four (24) hours after notice. Plaintiff ordered the cars in this instance on the 9th and 10th of December, but he did not receive the first one until the 12th of that month and the others between then and the 14th. The testimony shows, without contradiction, that on the night of the 7th of December, 1917, the thermometer in the latitude where the shipments were made dropped to zero and a snow fell fifteen (15) or more inches deep, that the weather remained at about that temperature or colder throughout the period covered by the transactions involved, and as a matter of fact we know, as a part of the current history of the country, that it lasted for sixty days. Covering the period involved it is also shown that snow continued to fall each successive day and there were severe blizzards and storms. The tracks of the defendant between Mitchellsburg and Louisville and in fact all over the surrounding territory, if not over the entire portion of the defendant's railway system, were covered in snow to such an extent that trains were not only delayed but many of them were actually annulled. Frequently, as shown by the testimony, engines would "freeze up" while out upon the road and when trains *were* operated they were greatly reduced in tonnage and many of them, as reduced, had to be operated with two engines. The yards in Louisville were in like condition, and the round house there became so clogged with snow that it became impossible to operate it, and section hands had to be taken from their regular duties to clean it out. These obstructions prevailed to such an extent that extra shifts of hands had to be employed so as to work upon the tracks both day and night in order to keep them in condition to carry on any sort of transportation. In short, according to the proof, this sudden drop in temperature was the worst, and also the

most paralyzing to railroad transportation, within the recollection of any of the witnesses.

It is the duty of common carriers to provide themselves with sufficient means to transport the amount of freight of the kind which it proposes to carry and which might ordinarily be expected to seek transportation on its route. Hutchinson on Carriers, section 495; Illinois Central Railroad Co. v. River & Rail Coal and Coke Co., 150 Ky. 489, 44 L. R. S. (N. S.) 643, and 10 Corpus Juris, pages 73 and 74.

It is conceded by attorney for plaintiff that in the absence of a contract or a statute to the contrary the carrier has a reasonable time within which to furnish cars for the transportation of freight after the shipper requests them. But, the carrier in such cases is required to exercise only reasonable diligence to procure the cars after being requested to do so, 10 Corpus Juris, 75, and Newport News, etc., Co. v. Mercer and Warfield, 96 Ky. 475; and it is the same character of diligence that the carrier must exercise in promptly transporting freight to the place of delivery. 10 Corpus Juris, pages 283, 284, 285 and 286. The carrier is not required, under the law, to exercise the same degree of care to prevent delays in shipments that it is required to exercise in the safe handling of freight, either animate or inanimate. The degree of care demanded of the carrier in the safe shipment of live stock and the liabilities which it incurs in such shipments are fully set out and discussed in the case of Louisville & Nashville R. R. Co. v. Taylor, 181 Ky. 794, and cases therein referred to. We are not concerned in this case with its duties in the handling of inanimate freight, since the shipments involved are not of that kind. The authorities, *supra,* and the case of C. N. O. & T. P. R. R. Co. v. Smith and Johnson, 155 Ky. 481, excuse the carrier from the consequences of delays, either in the furnishing of cars or in prompt transportation of the shipment, if they were produced by unavoidable accidents or other causes over which the carrier had no control and which it could not prevent by the exercise of ordinary care. Under these rules governing the duties of the defendant to furnish the cars requested by plaintiff and to transport his stock after being loaded into the cars, can it be said under the facts in this case that defendant was guilty of any negligence or that it failed to exercise the proper care in either respect?

While the question as to what is a reasonable time is ordinarily a question for the jury under all the circumstances of the case, and the same is true with respect to the question of whether ordinary care has been exercised, yet there are cases where it is the duty of the court to determine those questions and to instruct the jury accordingly. Thus, in the case of Louisville & Nashville R. R. Co. v. Mounce's Admr., 28 Ky. Law Reporter 933, it is said:

"Where, however, the defense is a plea in avoidance, and the evidence clearly sustains it, there being no conflict of evidence upon the point, then there is nothing for the jury to decide, because upon that point there is no fact at issue. The matter is reduced to a pure question of law, which is for the court always (Standard Oil Co. v. Eiler, 110 Ky. 209; Bush v. Grant, 22 Ky. Law Rep. 1766; L. & N. R. R. Co. v. Breeding, 13 Ky. Law Rep. 397; Greenwood v. McHenry, 14 Ky. Law Rep. 336; Henderson Trust Co. v. Stuart, 108 Ky. 167; City of Lancaster v. Walter, 25 Ky. Law Rep. 2189);" and there are numerous other cases from this court involving affirmative defenses, such as contributory negligence, wherein it was held that it was proper for the court to determine that the defense was proven and instruct the jury accordingly.

In this case, as we have seen, the testimony establishes without contradiction that which, if not an act of God, was at least such an unforeseen occurrence as to excuse defendant from the effects of either of the delays complained of. The evidence proves beyond dispute that the cars ordered in this case were delivered after they were obtained as speedily as possible under the prevailing conditions, and if it should be insisted, as it is, that it was the duty of defendant to have on hand accessible cars of the character ordered so that it might immediately transport them to Mitchellsburg, and that it failed in this respect, the answer is that the proof shows that such cars would have been on hand had not the weather conditions prevailed. It is shown that cars for the use of shippers, such as requested by plaintiff, are brought by incoming trains into the Louisville yards loaded with stock from various points and are available immediately upon being unloaded, but that because of the prevailing conditions none such were brought into Louisville and therefore could not be available. But, however this may be, the four cars which defendant did actually furnish were

immediately located within an accesible radius of Mitchellsburg and transported to that place as quickly as possible under the conditions.

We, therefore, think this is a case where the facts required the court to direct the jury to find for the defendant as to all the damages sued for which resulted from the two delays complained of, the one in failing to furnish the cars, and the other in failing to promptly transport the shipments; and if the testimony is substantially the same upon another trial the court will sustain the defendant's motion as to such damages. But the testimony is not sufficient to authorize a directed verdict with reference to the damages sustained because of the death of and injury to any of the stock while in transit. Neither the plaintiff nor any one representing him accompanied the shipments, and in that case the defendant was an insurer of their safe delivery at their destination, unless the injury or loss resulted from an act of God, the public enemy, the inherent nature, propensities, or viciousness of the animals themselves, or the negligence of the plaintiff. Louisville & Nashville R. R. Co. v. Taylor, *supra;* McCampbell, etc. v. Louisville & Nashville R. R. Co., 150 Ky. 723, and cases referred to. The evidence is insufficient for the court to determine that the death or injury of the animals occurred under any of the above enumerated circumstances which would excuse defendant from liability and the issue with respect thereto was properly submitted to the jury. Upon another trial if the evidence in sufficient to submit to the jury the damages resulting from the delay in the furnishing of the cars and in transportating the shipments the court will give a concrete instruction to the jury, in addition to those given on the first trial, in substance, that if such delays were brought about by an unusual or excessive snowfall or an unusual or excessively low temperature which caused them and which delays the defendant could not prevent by the exercise of ordinary care they should in that event return a verdict for the defendant.

Wherefore the judgment is reversed with direction to grant a new trial and for proceedings consistent with this opinion.