## Chesapeake & Ohio Railroad Company v. Coleman Fruit Company.

(Decided May 13, 1927.)

### Appeal from Pike Circuit Court.

1. Carriers.—The highest degree of care, imposed by law on carriers of freight in its handling en route, does not apply to mere delays in shipments; only ordinary care and diligence to avoid delays being required.

2. Carriers.—Carrier may arrange reasonable schedules for trains in carriage of freight, and is not chargeable for reasonable delay caused by connections necessary in reaching the destination.

3. Carriers.—In the absence of contractual fixed time, for deliveries of freight, a carrier is required to make deliveries within a reasonable time under the facts of each case.

4. Carriers.—Carrier may make reasonable provision for through trains, and distribution of freight from distributive points.

5. Carriers.—For a railroad to carry shipment of fruit and vegetables on a fast manifest freight train to a nearby distributing center, instead of stopping at destination, and thence on following day to destination, held not negligence per se.

6. Evidence.—The Court of Appeals takes judicial notice that distance by train from Ashland to Shelby is about 125 miles.

7. Carriers.—Speed of 12 miles per hour for fast manifest freight train carrying shipment of vegetables and fruit appears unreasonably slow, and in consignee's suit for spoilage requires explanation from carrier.

8. Carriers.—Delay in shipment of fruit and vegetables of 19 hours at intermediate point requires explanation by carrier in consignee's suit for loss from spoilage.

9. Carriers.—In consignee's suit against railroad for loss from spoilage of fruit and vegetable shipment, allegation and proof that shipment was in good condition when delivered to carrier are essential.

10. Carriers.—In consignee's suit against railroad for loss from spoilage of fruit and vegetable shipment, bills of lading of similar prior shipments, and testimony that they arrived at destination on days succeeding dates of bills, are incompetent without proof as to times, of delivery to carrier.

11. Carriers.—Whether loss was caused by failure to re-ice car held for jury in consignee's suit against carrier for spoilage of fruit and vegetable shipment, where bill of lading contained notation "no re-icing."

12. Carriers.—In suit against railroad for loss from spoilage of fruit and vegetable shipment, court should instruct jury that carrier would be liable for failure to exercise reasonable care in transportation of shipment in good condition when received.

13. Carriers.—Instruction in consignee's suit for spoilage, which required jury, in order to return verdict for carrier, to believe loss was not due to improper icing or failure to re-ice pursuant to bill of lading, though carrier transported shipment with reasonable dispatch, held error, since, if carrier transported shipment with reasonable dispatch, it was not liable.

BROWNING & REED and KIRK, KIRK & WELLS for appellant.

L. J. MAY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee and plaintiff below, Coleman Fruit Company, a corporation, was engaged in the wholesale fruit business in Pikeville, Ky. On September 6, 1923, there was consigned to it from Louisville, Ky., over the line of the appellant and defendant below, Chesapeake & Ohio Railroad Company, a mixed car of freight consisting of fruit and vegetables. The car was loaded in Louisville and ready for shipment at 4:30 p. m. on that day, and left Louisville on the first available train at 2 a. m. on September 7, 1923, arriving at Lexington at 6:20 a. m. the same day, nearly one hour ahead of schedule time. Another freight division handled the car from Lexington

to Ashland, and it left Lexington, on the first available train at 7:45 a. m. on September 7, and arrived at Ashland at 6:10 p. m. the same day, again ahead of the regular schedule time. The first available train thereafter on the branch line of defendant running from Ashland to Pikeville was due to leave Ashland at 12:50 a. m. (or 12:50 p. m.) on September 8, which it did on this occasion and carried with it the involved shipment. According to defendant's proof, that train was a fast manifest freight, and was not scheduled to stop at Pikeville, but at Shelby, a short distance from Pikeville, and which was a distributing place for shipments consigned to surrounding points. The particular shipment was due to be carried from Shelby to Pikeville by a local freight train on the morning of the 9th, which in this case was Sunday, and upon which the local freight did not operate. However, this particular consignment was carried by a special train from Shelby to Pikeville in the early afternoon of that day. It was not unloaded until Monday the 10th, when it was found that about one-half of the consignment was decayed and worthless, and the consignee later brought this action against the railroad company to recover the value of the lost freight which plaintiff fixed at the sum of $306.75, and which was charged to be due to defendant's negligent delay in the transportation. The answer denied the material averments of the petition and upon trial the jury under the submitted instructions of the court returned a verdict in favor of plaintiff for the amount sued for and defendant's motion for a new trial was overruled followed by judgment on the verdict and to reverse it defendant has filed a transcript of the record in this court with a motion for an appeal.

The evidence in the case sustained and proved the handling of the shipment as above outlined. The highest degree of care imposed by law on carriers of freight in its *handling* en route does not apply to mere *delays* in shipments, since the carrier is only required to exercise ordinary care and diligence to avoid such delays. Louisville & Nashville Railroad Co. v. Crain, 189 Ky. 431, 224 S. W. 1063, and cases and authorities therein cited. It is also the law that a carrier may arrange reasonable schedules for its trains in the carriage of freight and is not chargeable for a reasonable delay caused by connections necessary to reach the destination. Adams Express Co. v. Burr Oak Jersey Farm, 182 Ky. 116, 206 S. W. 173, and which case is also authority in support of the

degree of care required in transporting freight, supra, and the opinion therein also announced the rule that, in the absence of a contractual fixed time for the deliveries of freight, the carrier is required to do so within a reasonable time, and which must be measured by the peculiar facts of each case, and, furthermore, that, in order to expedite its business and with a view of greater efficiency in serving the public in general, a carrier may provide for through trains and the distribution of shipments from distributive points if such provision is reasonable. It was therefore not negligence per se for defendant in this case to carry the freight involved to Shelby instead of stopping it at Pikeville, and thence to its final destination from such distributing point, provided the delay thereby created, if any, was not unreasonable.

It will be observed that one of the proven schedules of the carriage of the freight in this instance from Ashland to Shelby occupied $21\frac{1}{2}$ hours; i. e., from 12:50 a. m. on September 8, to 10:20 p. m. the same day. The train making that run was supposed to be a fast manifest freight. We judicially know that the distance was only about 125 miles, and the train made only about 6 miles per hour. Another witness testified that the shipment left Ashland at 12:50 p. m. on September 8, which, if true, the train that carried it made only about 12 miles per hour and in either event it would appear to be an unreasonably slow schedule for that character of train and to require some explanation on the part of the carrier. Moreover, if the latter was true, then there was a lay-over of the shipment at Ashland of about 19 hours, which should also be explained by the carrier. Hence the court did not err in overruling the motion for a peremptory instruction.

The petition did not allege that the shipment was in good condition when it was delivered to defendant, nor was there any proof introduced or offered to prove that fact which is an essential one to be both alleged and proven if denied in cases of this kind. During the trial, plaintiff was permitted, over the objections of defendant's counsel, to introduce bills of lading covering prior similar shipments, and to testify that such shipments arrived in Pikeville on the afternoon of the next day following the dates of such bills. We are convinced that such testimony was incompetent without other proof as to the time when such shipments were delivered to the

carrier. It might be that they left Louisville in the early morning of the date of the bills, and were therefore handled under a different schedule, which, if true, the testimony would have but little if any bearing upon delays encountered in the transportation of freight under a different schedule that was the first and only available one after the freight was received for shipment. There was a notation on the bill of lading in this case saying "no re-icing," and for that reason the defendant did not re-ice the car in transit, and it is insisted by defendant that the loss sustained was attributable to the fact of such notation whereby the car was not re-iced. But that question was properly submitted to the jury for its determination.

Instructions Nos. 1 and 2, given by the court on its own motion, did not properly submit the legal measure of defendant's care in the transportation of the car, in that, when they are read together, they impose the highest degree of care, the same as is required in the handling of the shipment, but which, as we have seen, is not the correct rule on the question of delays in shipment. Instead of instruction No. 1, the court should have said to the jury, in substance, that it was the duty of defendant to exercise reasonable care to transport the freight after receiving it, and, if the jury should believe that it was in good condition when so received and defendant failed to exercise such care in its transportation, and by reason thereof any of it was lost by decay, then the law was for the plaintiff and the jury should so find, etc. Instruction No. 2 requires the jury to believe, before it could return a verdict for defendant, not only that it transported the freight with reasonable dispatch, but also that the loss to it was not due to improper icing or a failure to re-ice the car in transit pursuant to the notation on the bill of lading. That instruction was erroneous because, if defendant exercised reasonable care to and did transport the freight with reasonable dispatch, it would not be liable for the loss, regardless of whatever else produced it.

For the errors indicated, the motion for appeal is sustained, and the appeal is granted, and the judgment is reversed, with directions to sustan the motion for a new trial and for proceedings consistent herewith.